STATE OF CONNECTICUT *v.* BENJAMIN CARDONA
(2781)

SPALLONE, DALY and BIELUCH, Js.

Argued October 9, 1985—decision released February 4, 1986

*James J. Ruane,* special public defender, with whom, on the brief, were *Richard T. Meehan, Sr.,* and *Richard T. Meehan, Jr.,* for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Domenick J. Galluzzo,* assistant state's attorney, for the appellee (state).

SPALLONE, J. The defendant was charged with the crime of murder in violation of General Statutes § 53a-54a. He was convicted, after a jury trial, of the lesser included offense of assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and is appealing from the judgment of that conviction.

The jury could reasonably have found the following facts. On the evening of October 10, 1982, the defendant went to Fannie's Lost and Found Cafe, in Bridgeport. While there, he socialized with several individuals including the following: Willie Tolliver, the cafe's bouncer; Barry Hopkins, who, along with the defendant, was charged in connection with the stabbing death of Luis Valentine; Richard Young, the main witness against the defendant; Bernadine James, the sister of Barry Hopkins; Alice White, the defendant's girlfriend by whom he had a son; and Agnes White, Alice White's sister-in-law. The defendant consumed several drinks while at the bar. At approximately midnight the defendant left the bar with Tolliver. The two men went to Park City Hospital where Tolliver was treated for a stomach ailment. The defendant left Tolliver at the hospi-

tal and went back to Fannie's Lost and Found Cafe. He remained there until closing, approximately 2 a.m.

Throughout the evening, the defendant and the other individuals discussed an incident in which Bernadine James' daughter had been sexually molested. Richard Young, upon hearing of the molestation of the young girl, became extremely upset, expressed his desire to confront the individual involved, and had to be calmed down. At some point, Young volunteered to go with Barry Hopkins to pick up the individual whom they believed was responsible for the molestation.

When the cafe closed, the defendant, Young, Hopkins and another individual, Richard Coover, left together. Agnes White and Bernadine James walked to White's apartment where they were met by the defendant, Young and Hopkins. Coover had been dropped off at his home.

The victim, Luis Valentine, was also at White's apartment. He spoke with the defendant and Hopkins and left with them. The defendant, Young and Hopkins returned to White's apartment approximately forty-five minutes after they had left. Valentine did not return with them. Upon entering the apartment, Young threw at least two knives into the kitchen sink, Hopkins wrapped a towel around his hand which had been cut and the defendant banged his head against the refrigerator and stated that he was sorry. Shortly thereafter, the three men went to Bridgeport Hospital seeking treatment for Hopkins' hand. Hopkins remained at the hospital. The defendant and Young left and the defendant eventually drove Young to the Bridgeport train station where Young boarded a train bound for New York. Young left the train and reported Valentine's death to the Bridgeport police. He took the police to the body and implicated the defendant and Hopkins in the killing, whereupon the police sought the arrests of both men.

## I

The defendant's first claim is that the trial court erred in denying his request for production of written statements of named, but uncalled, state's witnesses.

In his motion for discovery, the defendant requested the names and addresses of individuals whom the state intended to call as witnesses at trial. The court granted the defendant's request as limited by Practice Book §§ 743 and 752.[1] At the close of the state's case, the state had not called all the witnesses originally named. The defendant filed a motion for production seeking copies of all written statements of the individuals named but not called. The court denied the defendant's motion and the defendant called these individuals as witnesses during the presentation of his case. Each witness was subject to full cross-examination.

The defendant claims that the denial of his request for production violated his federal and state constitutional right to a fair trial and his right to call witnesses on his own behalf. He argues that, without knowing the contents of the witnesses' statements in advance, he was foreclosed from making an intelligent decision whether to call the particular individual as a witness,

[1] Practice Book § 743 provides: "Upon motion made by the defendant, upon a showing of materiality to the preparation of the defense and a showing that the request is reasonable, the judicial authority may order the prosecuting authority at the commencement of trial to disclose to the defendant the names and addresses of all witnesses whom the prosecuting authority intends to call at trial, excluding those names already disclosed pursuant to Sec. 764. The fact that a witness' name is on a list furnished under this section shall not be a ground for comment upon a failure to call a witness."

Practice Book § 752 provides: "After a witness called by the state has testified on direct examination at trial, the judicial authority shall, on motion of the defendant, order the state to produce any statement of the witness in the possession of the state or its agents, including state and local law enforcement officers, which statement relates to the subject matter about which the witness has testified."

thereby undermining his opportunity to present a complete defense. We find this argument unpersuasive.

## A

It is clear that the provisions of Practice Book § 752 which require the production of a statement of a witness who testified for the prosecuting authority are mandatory. *State* v. *Anonymous (83-FG),* 190 Conn. 715, 732, 463 A.2d 533 (1983); *State* v. *Gonzales,* 186 Conn. 426, 432, 441 A.2d 852 (1982). Our rules on this subject are substantially similar to the Jencks Act, 18 U.S.C. § 3500; *State* v. *Gonzales,* supra; which provides for discovery of statements and reports in criminal prosecutions brought by the United States. A prerequisite to the applicability of the Jencks Act is that the individual whose statement or report is sought be called as a witness. *United States* v. *Disston,* 612 F.2d 1035, 1038 (7th Cir. 1980). " 'The purpose of the Jencks Act was to provide the defense with a means of impeaching a government witness by means of a prior inconsistent statement . . . while not allowing an unrestrained search through government files.' *United States* v. *Catalano,* 491 F.2d 268, 274 (2d Cir.), cert. denied, 419 U.S. 825, 95 S. Ct. 42, 42 L. Ed. 2d 48 (1974) . . . ." *State* v. *Hinton,* 196 Conn. 289, 301, 493 A.2d 836 (1985). The language of our rules in this regard is clear and is consistent with the federal rule. Only "after a witness called by the state has testified on direct examination at trial" must the judicial authority order the state to produce any statement of the witness which is in the possession of the state or its agents. Practice Book § 752. Nowhere do the rules of practice indicate that the state is required to produce the statements of prospective witnesses whom the state decides ultimately not to call at trial.

Although this rule must not be applied so as to circumvent the prosecution's duty "to ensure that all evi-

dence tending to aid in the ascertainment of the truth be laid before the court, whether it be consistent with the contention of the prosecution that the accused is guilty"; *State* v. *Moynahan,* 164 Conn. 560, 568, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219 (1973); it must be recognized that there is no constitutional requirement that the prosecution routinely deliver its entire file to the defense. *California* v. *Trombetta,* 467 U.S. 479, 104 S. Ct. 2528, 2534 n.8, 81 L. Ed. 2d 413 (1984).

### B

The defendant argues further that Practice Book § 741 (3) requires the production of the written statements he sought. Again, we do not agree.

Practice Book § 741 (3) requires the prosecuting authority to disclose to the defendant certain relevant materials which are exculpatory, material to the preparation of the defense or which are intended for use by the prosecution as evidence in chief at the trial. The rule does not require the wholesale production of all materials and information in the prosecution's possession. The defendant's pretrial motion for discovery and inspection which sought the statements in question was granted by the trial court as limited by the provisions of Practice Book § 752, discussed above. The record and transcripts do not indicate that the defendant made a showing of materiality sufficient to require production of the statements in question under § 741 (3). Likewise, there was no showing that the statements were exculpatory and therefore discoverable. Absent any such showing, we cannot say that the trial court erred in denying the defendant's requests for production of the statements.

### II

The defendant's next two claims challenge the propriety of two related rulings made by the trial court which concerned the admissibility of prior written statements.

## A

During the trial, the defense called Bernadine James as a witness. On cross-examination, the state questioned her in detail as to her withdrawal of charges against an individual charged with the molestation of James' daughter. The state also questioned the witness as to the events preceding the homicide of Luis Valentine.

In an attempt to impeach the witness' credibility, the state offered a statement she made to the police in which she recounted the events in question. The defendant objected to the introduction of the statement and sought to limit the offer to what the state alleged to be inconsistencies with her in-court testimony. The court overruled the defendant's objection and concluded that the alleged inconsistencies could not be isolated and taken out of context. The defendant claims that the trial court's ruling which allowed into evidence the unretracted statement of a witness violated his federal and state constitutional right to a fair trial.

The elementary rule of evidence that the credibility of a witness may be attacked by showing a materially inconsistent prior statement made by that witness is well settled in our law. *State* v. *Carter,* 189 Conn. 631, 639–40, 458 A.2d 379 (1983); *G & R Tire Distributors, Inc.* v. *Allstate Ins. Co.,* 177 Conn. 58, 60–61, 411 A.2d 31 (1979); *State* v. *Saia,* 172 Conn. 37, 45–46, 372 A.2d 144 (1976). The trial court is vested with broad discretion in controlling the inquiry surrounding such matters and in deciding whether and to what extent the inconsistent statements should be admitted. *G & R Tire Distributors, Inc.* v. *Allstate Ins. Co.,* supra; *State* v. *Saia,* supra. The trial court's ruling will not be disturbed unless it is clear that its discretion has been abused. In the present action, the trial court did not abuse its discretion.

## B

In an attempt to rehabilitate James, the defense sought to introduce a written statement which James had given at the request of her attorney five and one-half months after Luis Valentine had been killed. The defendant argues that the statement was consistent with her in-court testimony and was admissible. The court ruled that the statement was inadmissible on the ground that it was made at a time when the witness possessed a motive to falsify, i.e., the witness' brother, Barry Hopkins, had at that point been charged with murder in connection with the death of Luis Valentine.

The general rule is that a witness' prior consistent statements are inadmissible at trial. *State* v. *Brown,* 187 Conn. 602, 607, 447 A.2d 734 (1982); *State* v. *Dolphin,* 178 Conn. 564, 568, 424 A.2d 266 (1979). Nevertheless, prior consistent statements have been allowed to rehabilitate a witness who has been impeached "by a prior inconsistent statement; by a suggestion of a bias or an interest which was not present at the time of the prior consistent statement; or by a suggestion of recent contrivance." *State* v. *Brown,* supra, 608; see *State* v. *Anonymous,* supra, 728. The admission of such statements is, however, totally within the trial court's discretion. *State* v. *Dolphin,* supra, 569.

Under the circumstances of the present case, having concluded that the witness possessed a reason to falsify her statements, the court acted within its broad discretion in not allowing the witness' prior statements into evidence. See *State* v. *McCarthy,* 179 Conn. 1, 20–21, 425 A.2d 924 (1979).

## III

The defendant next challenges his arrest as violative of his federal and state constitutional right to be free from unreasonable search and seizure.

Although the facts surrounding the arrest of the defendant are somewhat unclear, the jury could reasonably have found the following. Based upon the information the Bridgeport police obtained from Richard Young, the defendant was arrested at a house located on Lyon Terrace in Bridgeport within a very short distance from the police station. After the defendant's arrest was ordered, at least four police officers went to the house. Two of the officers knocked on the front door and a young woman answered. One of the officers asked if the defendant was in the house. The woman told the officer that the defendant was upstairs. The woman then opened the door wider. The officer stated again that he was looking for the defendant, and the woman backed up, gestured up the stairs and stated that the defendant was upstairs. At least one of the officers proceeded upstairs and found the defendant fully clothed lying on a bed. The defendant was handcuffed and was escorted to the police station. The arrest was made without first obtaining a warrant and the defendant argues that it violated his constitutional rights. We disagree.

## A

The events which took place at the time of the arrest actually involved both the warrantless search of a dwelling and the subsequent warrantless arrest or seizure of the defendant. Although the search of the dwelling was for the sole purpose of arresting the defendant, it is clear that probable cause to arrest is not alone sufficient to allow the warrantless entry into a home. "To be arrested in the home involves not only the invasion attendant to all arrests but also an invasion of the sanctity of the home." *Payton* v. *New York,* 445 U.S. 573, 588–89, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980), quoting *United States* v. *Reed,* 572 F.2d 412, 423 (2d Cir. 1978). Because warrantless searches and seizures inside a home are presumptively unreasonable; *Payton* v. *New*

*York,* supra, 586; *State* v. *Guertin,* 190 Conn. 440, 446, 461 A.2d 963 (1983); a greater burden is placed upon the arresting officers to show a reason for such searches and seizures.

As a threshold matter, we must address the state's claim that the defendant lacks standing to contest the warrantless search of the house in which he was located by the police. See *State* v. *Callari,* 194 Conn. 18, 23, 478 A.2d 592 (1984), cert. denied, 469 U.S. 1210, 105 S. Ct. 1178, 84 L. Ed. 2d 327 (1985). The state argues that the defendant was merely a transient social guest at the residence in question and, therefore, had no standing to challenge the constitutionality of the warrantless search undertaken by the police.

"The defendant bears the burden of establishing the facts necessary to demonstrate a basis for standing. *State* v. *McLucas,* 172 Conn. 542, 546, 375 A.2d 1014, cert. denied, 434 U.S. 855, 98 S. Ct. 174, 54 L. Ed. 2d 126 (1977). Critical to this standing determination is the defendant's showing that he possessed a legitimate expectation of privacy in the premises searched. *United States* v. *Payner,* 447 U.S. 727, 731, 100 S. Ct. 2439, 65 L. Ed. 2d 468, reh. denied, 448 U.S. 911, 101 S. Ct. 25, 65 L. Ed. 2d 1172 (1980); *State* v. *McLucas,* supra." *State* v. *Callari,* supra. From the evidence introduced at trial, it is clear that the defendant had such a privacy expectation. The home was that of Laurel Kovacs. Alice White, who was Kovacs' daughter and the girlfriend of the defendant, lived there. The defendant's son, whose mother was Alice White, also lived there. Kovacs testifed that the defendant was staying there with her permission, that her door was always open to the defendant and that her home was his home. She also testified that the defendant stayed at her home at least once a week. At times, the defendant stayed as long as two or three months. When he stayed, the defendant always contributed to the household by means of

money, food or some other contribution. On the basis of these facts, and under the circumstances of this case which portray a uniquely complex network of familial relationships, the defendant had an expectation of privacy in the subject premises, and, consequently, had standing to challenge the validity of the search. Compare *State* v. *Callari,* supra, 23–24.

## B

One recognized exception to the warrant requirement is where a search has been undertaken pursuant to consent. *State* v. *Gallagher,* 191 Conn. 433, 437, 465 A.2d 323 (1983); *State* v. *Zindros,* 189 Conn. 228, 237, 456 A.2d 288 (1983), cert. denied, 465 U.S. 1012, 104 S. Ct. 1014, 79 L. Ed. 2d 244 (1984). The state claims this exception and bears the burden of proving it. *State* v. *Jones,* 193 Conn. 70, 78–79, 475 A.2d 1087 (1984); *Dotson* v. *Warden,* 175 Conn. 614, 618, 402 A.2d 790 (1978). "Consent requires an affirmative finding of voluntariness and is not established by a mere acquiescence to a claim of lawful authority." *Dotson* v. *Warden,* supra, 619. It must be freely and voluntarily given, which is a "question of fact to be determined from the totality of the circumstances." Id.

The testimony produced at trial reveals that there were six individuals in residence at the house where the defendant was picked up. They were: Laurel Kovacs; Kovacs' mother; Kovacs' daughters, Carol Kovacs and Alice White; Benjamin Cardona, Jr. and Benjamin Cardona, the defendant. As discussed earlier, one of the young women answered the knock of the police officers. The officers told her that they were looking for the defendant. The girl stepped back and told the officers that the defendant was upstairs. There is no indication that the alleged consent was coerced by the police officers or that any resident of the house protested their entry. When viewing, in total, the circum-

stances surrounding the officers' entry into the house, we conclude that such entry was consented to and, therefore, did not violate the defendant's constitutional rights.

## C

With regard to the validity of the warrantless arrest of the defendant, it cannot be argued seriously that reasonable grounds upon which to arrest the defendant did not exist.

A police officer is authorized to arrest an individual, without first obtaining a warrant, who the officer apprehends in the act or on speedy information of others, or who the officer has reasonable grounds to believe has committed or is committing a felony. General Statutes § 54-1f (a) and (b). "Reasonable grounds" is equated with probable cause which "exists when the facts and circumstances within the knowledge of the officer and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that a felony had been committed." *State* v. *Wilson,* 153 Conn. 39, 42, 212 A.2d 75 (1965); *State* v. *Dennis,* 189 Conn. 429, 431, 456 A.2d 333 (1983). "The quantum of evidence necessary to establish probable cause exceeds mere suspicion, but is substantially less than that required for conviction." *State* v. *Dennis,* supra.

In the present action, the police took the statement of Richard Young, an eyewitness to the killing who had implicated the defendant and who had taken the police to the body of the victim, Luis Valentine. After receiving this information, the police went to Laurel Kovacs' home, where they believed the defendant was staying. Upon arriving at the housing complex, the police found an automobile which looked to be the one reportedly used by the alleged perpetrators of the crime. Inside the automobile, the police noticed a bloody newspaper

and blood stained seats. Upon inquiry, the police received information that the automobile was believed to belong to the residents in the Kovacs' home.

These facts and circumstances provided reasonable grounds for the police to believe the defendant was involved in the killing of Luis Valentine. As such, we cannot say that the warrantless arrest of the defendant was unlawful.

### IV

The defendant's next claim poses a constitutional challenge to the admissibility of the defendant's written statement to the police. The dispositive question raised by this claim is whether the defendant knowingly and intelligently waived his fifth amendment rights.

The state must prove by a preponderance of the evidence that the defendant knowingly and intelligently waived his constitutional right to remain silent. *State* v. *Aversa,* 197 Conn. 685, 695, 501 A.2d 370 (1985); *State* v. *Alfonso,* 195 Conn. 624, 628, 490 A.2d 75 (1985). Demonstrating that *Miranda* warnings were given and understood does not establish waiver conclusively. *State* v. *Aversa,* supra; see *State* v. *Thompson,* 5 Conn. App. 157, 167, 497 A.2d 423 (1985). Whether the waiver was voluntary is a question of fact to be determined by the trial court with reference to the circumstances surrounding the defendant's statements. *State* v. *Jones,* supra, 84. The defendant contends that the state has failed to meet its burden of proof regarding the voluntariness of the defendant's waiver. We disagree.

The state's evidence indicated that in addition to being advised orally of his rights, the defendant was presented with a written advisement containing six numbered paragraphs. Paragraphs one through five each contained separate portions of the defendant's

rights, and paragraph six contained a provision expressly waiving those rights. The defendant read each portion of the written advisement and initialed each of the first five paragraphs separately in blanks provided on the form. The sixth paragraph, containing the waiver, was read. Beneath the waiver provision there were signature, date and time lines. The defendant signed the document, dated it and specified the time in the areas designated. Inspector Fabrizi advised the defendant of these rights and witnessed his signature to the waiver in writing.

Upon signing the waiver provision, the defendant was interviewed by the police and gave a statement. The statement was typewritten and the defendant read it, corrected it and initialed the corrections. There is no indication that force or coercion of any kind was employed in obtaining the defendant's waiver or in taking his statement. The statement given by the defendant does not itself indicate a lack of understanding or intelligence on his part. The defendant's responses to the questions posed demonstrate his cognizance of the situation at hand and his willingness to answer.

We conclude, therefore, that the trial court did not err in finding that the defendant knowingly and voluntarily waived his right to remain silent. See *State* v. *Aversa,* supra, 697–98; *State* v. *Thompson,* supra, 167–68.

V

The defendant's next claim is that the trial court's charge to the jury as prescribed by General Statutes § 54-84 (b) violated his constitutional rights against self-incrimination.

Although the defendant submitted requests to charge at trial, he did not request a charge relating to General Statutes § 54-84 (b) which provides that "[u]nless

the accused requests otherwise, the court shall instruct the jury that they may draw no unfavorable inferences from the accused's failure to testify. In cases tried to the court, no unfavorable inferences shall be drawn by the court from the accused's silence."

The charge given by the trial court tracked closely the language of the statute.[2] Although the defendant objected and properly excepted to the charge when given, he has failed to preserve adequately his objection for appellate review. When error is claimed as in the charge to the jury, the party claiming error must include in his brief a verbatim statement of all relevant portions of the charge and all relevant exceptions to that charge. See Practice Book § 3060F (d) (2). The defendant has failed to do so with regard to the present claim of error. Accordingly, we decline to consider the defendant's claim. See *State* v. *Wright,* 197 Conn. 588, 595, 500 A.2d 547 (1985).

## VI

The defendant's next claim is that the trial court erred in failing to charge the jury on assault in the first degree; General Statutes § 53a-59 (a) (2);[3] as a lesser included offense of murder as requested by the defendant.

---

[2] The jury was instructed that they "may draw no unfavorable inferences from the failure of the accused, Mr. Cardona, to testify and it should not be considered in your deliberations."

[3] General Statutes § 53a-59 (a) provides: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; or (2) with intent to disfigure another person seriously and permanently, or to destroy, amputate or disable permanently a member or organ of his body, he causes such injury to such person or to a third person; or (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person."

" 'A defendant is entitled to an instruction on a lesser offense if, and only if, the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser.' *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980)." *State* v. *McCarthy,* 197 Conn. 247, 262, 496 A.2d 513 (1985); *State* v. *Fernandez,* 5 Conn. App. 40, 45, 496 A.2d 533 (1985).

The defendant argues that the mandates of *Whistnant* were met in the present action and that therefore the trial court erred in refusing to instruct the jury as requested. See *State* v. *Falby,* 187 Conn. 6, 444 A.2d 213 (1982). We disagree.

The third prong of *Whistnant* requires that there be "some evidence . . . which justifies conviction of the lesser offense." *State* v. *Whistnant,* supra, 588. In support of his claim of error, the defendant argues that if the defendant stabbed the victim, he stabbed only the victim's neck. To this argument, the defendant adds the testimony of Richard Young and that of Harold Carver, a forensic pathologist. Young testified that the defendant slashed Valentine on the neck. Carver testified that there were very few wounds to Valentine's neck, and only one such wound was deep. It is the defendant's contention that the evidence presented is evidence of the defendant's intent to disfigure or disable permanently an organ or member of Valentine's body.

The defendant's argument is based upon conjecture which, if accepted, would not entitle the defendant to the requested jury charge. The evidence simply does not justify a conviction under the provisions of General Statutes § 53a-59 (a) (2) which requires an "intent to disfigure . . . destroy, amputate or disable permanently . . . . " The trial court therefore did not err in refusing to charge on the crime of assault in the first degree pursuant to General Statutes § 53a-59 (a) (2).

## VII

The defendant's final claim relates to the manner in which the court charged the jury[4] on assault in the first degree pursuant to General Statutes § 53a-59 (a) (1) and (3).[5] The essence of the defendant's claim is that the court, by its instruction, presented subsection (3) of § 53a-59 (a) as a lesser included offense of subsection (1) of that same section.

It is clear that the statutory provisions in question are separate and distinct offenses which, under the proper circumstances, may be considered lesser included offenses of the crime of murder. A review of the relevant portions of the transcript indicates that when instructing the jury on the elements necessary to find the defendant guilty of assault in the first degree, the court discussed first the requirements embodied within General Statutes § 53a-59 (a) (1). When this instruction was completed, the court stated: "There is also one other possibility. If you find that the State has failed to prove beyond a reasonable doubt that the wounds allegedly inflicted by Mr. Cardona were a substantial contributing factor or cause of death and the State has also failed to prove all the elements of assault in the first degree under Subsection 1 of the

---

[4] Unlike the previous claim, the defendant has preserved the present claim for appellate review.

[5] See footnote 3, supra.

statute which I just explained, you may go on to consider whether the accused might be guilty of assault in the first degree under Subsection 3 of the statute.'' The defendant objected to the specific language employed by the court when instructing the jury on the separate provisions as misleading, and argues that the overall effect of the charge was to misguide the jury to the defendant's detriment. We disagree.

Although the charge as originally given appears on its face to contain some ambiguity, the court's supplemental charges and explanations to the jury sufficiently clarified any such ambiguity. The transcript indicates that at some point after the jury had commenced deliberating, they requested an explanation of the charges. The court then reviewed the verdicts which the jury could possibly reach.

In its remarks regarding assault in the first degree, the court indicated clearly that there were two options available under General Statutes § 53a-59 (a); assault in the first degree pursuant to subsection (1) requiring an intent to cause serious physical injury, and assault in the first degree pursuant to subsection (3) requiring reckless behavior under circumstances evincing extreme indifference to human life which cause a grave risk of death and serious injury.

The transcript indicates further that the verdicts which were possible were explained to the jury for a third time. Again the court explained clearly the two separate and distinct possibilities under the general category of assault in the first degree pursuant to § 53a-59 (a) (1) and (3).

Upon viewing the charge as a whole, so as to eschew critical dissection of it; *State* v. *McCalpine,* 190 Conn. 822, 830, 463 A.2d 545 (1983); we conclude that the court's original and supplemental instructions fairly and adequately presented the case to the jury. *State* v.

*Cannon,* 185 Conn. 260, 269, 440 A.2d 927 (1981); *State v. Biller,* 5 Conn. App. 616, 622, 501 A.2d 1218 (1985); see *State* v. *Cavros,* 196 Conn. 519, 528, 494 A.2d 550 (1985). The court's instructions were orderly, logical and imparted no injustice to either party.

There is no error.

In this opinion the other judges concurred.