## ROBERT A. EPSTEIN *v.* AUTOMATIC ENTERPRISES ET AL.
### (3408)

HULL, SPALLONE and DALY, Js.

Argued January 17—decision released March 18, 1986

*Paul E. Pollock,* for the appellants (defendant Albino J. Romano et al.).

*Lawrence M. Lapine,* for the appellee (plaintiff).

SPALLONE, J. The plaintiff brought suit against the defendants, several corporations and two individuals, in three counts claiming conversion, breach of contract

and unjust enrichment. The jury returned a verdict in favor of the plaintiff on the conversion count in the amount of $77,215.83 and on the unjust enrichment count in the amount of $3500. The jury returned a defendants' verdict on the contract count. The defendants thereafter filed a motion for judgment notwithstanding the verdict in accordance with their prior motion for a directed verdict and motion to set aside the verdict. The individual defendants appeal from the judgment rendered after the court denied these motions.

They claim (1) that the evidence submitted was insufficient to establish a cause of action in conversion because the plaintiff did not make a demand upon the defendants for the return of the property, and (2) that the trial court erred in its charge to the jury with regard to the burden of proof and the measure of damages.

From the evidence submitted the jury could reasonably have found the following facts. The individual defendants, Albino Romano (Romano, Sr.) and Dorothy Romano (D. Romano) conducted a food and beverage vending machine business in the city of Stamford for about twenty-five years prior to 1977. In the spring of 1977, they sold one-half of the business to Bruce Kosman and Leonard James, and transferred the remaining one-half of the business to their son, Albino Romano, Jr. (Romano, Jr.), who lived with them and who was employed in the business. The three new owners set up a new corporation, the defendant Automatic Enterprises, Inc. (Automatic), and hired Romano, Sr., to continue to service the vending machines. The defendants, Romano, Sr., and D. Romano had installed and serviced vending machines at the Pitney-Bowes manufacturing plant for many years. In order to keep this business, the new owners were required to replace some old machines. Some time prior to June, 1977, Automatic ordered twenty-four food and beverage

vending machines from National Vendors. After placing the order, Kosman and Romano, Jr., discovered that they did not have the money and could not arrange for financing on their own to pay for the machines.

Norman Reader, who was their banker, suggested that Kosman and Romano, Jr., contact an investor who might buy the machines for his own account and then lease them to Automatic. He advised them that an investor might work with them on a business arrangement where the investor would receive the tax benefits of ownership and Automatic would have the use of the machines.

The plaintiff, with whom Reader and Kosman were friendly, was a customer at Reader's bank. Reader suggested to Kosman and Romano, Jr., that they speak to the plaintiff about investing in the machines. After meeting with Kosman and Romano, Jr., the plaintiff agreed to purchase the twenty-four vending machines required for the Pitney-Bowes installation. The plaintiff made arrangements with Reader's bank to borrow the necessary funds and to make monthly payments on a resulting note. There was no formal written agreement between the plaintiff and Automatic, as the plaintiff had not decided whether to lease the machines or to enter into a management contract.

On or about June 22, 1977, the plaintiff was notified that the machines had arrived in Stamford. The plaintiff went to the bank, met with Reader, Kosman and Romano, Jr., and was presented with a bill of lading from the delivering truck driver. The plaintiff paid the amount of $53,153.24 which was due under the bill of lading. Since the bill of lading was made out to Automatic, the plaintiff requested and received a letter from Automatic acknowledging the plaintiff's ownership of the machines. Subsequently, the plaintiff received a letter from National Vendors recognizing the fact that

he had paid for the machines and that they had been sold to him through Automatic. After the machines were paid for, they were taken to Automatic's warehouse where they were serviced and prepared for installation at Pitney-Bowes. Romano, Sr., worked on the new machines and helped in their installation.

During the summer of 1977, Kosman and James had a falling out with Romano, Jr., and as a result transferred their one-half interest in Automatic back to Romano, Sr., and D. Romano on October 14, 1977. At this point, no written agreement had been worked out between the plaintiff and Automatic. The plaintiff made the first payment on his note with the bank when it became due in September, 1977. The amount paid by the plaintiff was $1710. At the same time, Automatic paid the plaintiff $1400. In October, 1977, the plaintiff made the second monthly payment and received a check from Romano, Jr., which was returned for insufficient funds. No further funds were received by the plaintiff from any of the defendants. In November, 1977, when the plaintiff attempted to locate Romano, Jr., he was told that Romano, Jr., had left the state and his whereabouts were unknown.

Some time in October or November of 1977, the defendant Romano, Sr., took possession of the machines and claims that he gave them to his daughter at the same time. In spite of this claim, the defendants continued to service the machines and retained all the revenue they collected from the machines and continue to this date to do so. In 1978, the machines located at Pitney-Bowes grossed $76,943.53 and in 1979, the sales were $75,675.53. The plaintiff paid off his note over a period of three years, but never received any payments from Romano, Sr., and D. Romano.

The defendants' first claim, that there was insufficient evidence to maintain a cause of action in conver-

sion, is unpersuasive. Conversion occurs when one, without authorization, assumes and exercises the right of ownership over property belonging to another, to the exclusion of the owner's rights. *Falker* v. *Samperi,* 190 Conn. 412, 419, 461 A.2d 681 (1983). " 'The essence of the wrong is that the property rights of the plaintiff have been dealt with in a manner adverse to him, inconsistent with his right of dominion and to his harm.' " *Coleman* v. *Francis,* 102 Conn. 612, 615, 129 A. 718 (1925). The defendants' assertion that the plaintiff was required to demand the return of the machines to recover in conversion is without merit. Conversions are grouped into two general classes. The first class pertains to instances of tortious taking in that the possession is originally wrongful. Because proof of the tortious act establishes the conversion, a demand for and refusal to return the property in question are unnecessary. Id., 616. "The second class is where the possession, originally rightful, becomes wrongful by reason thereafter of a wrongful detention, or a wrongful use of the property, or the exercise of an unauthorized dominion over the property. In the last two groups of this class, the wrongful use and the unauthorized dominion, constitute the conversion; therefore no demand for the return of the personal property is required. In the first group, since the possession is rightful and there is no act of conversion, there can be no conversion until the possessor refused to deliver up the property upon demand. Unexplained, the refusal is evidence from which a conversion may be found." Id.

There was ample evidence supporting the jury's verdict regarding conversion. The evidence of the manner in which Romano, Sr., assumed and exercised the rights of ownership, including his claim that he gave the machines to his daughter, completely supports the jury's verdict. Under the facts in this case, the jury could readily find that a conversion occurred by a

wrongful taking or an illegal assumption of ownership, wholly unauthorized by the plaintiff. See id.

The defendants next claim that the trial court erred when it instructed the jury on the burden of proof. We conclude that this claim is not supported by the record. The charge clearly explained that it was the plaintiff's burden to prove his case by a preponderance of the evidence. The court stated that it was not the obligation of the defendant to disprove the essential elements of the plaintiff's cause of action. The charge in regard to the burden of proof, when read in its entirety, correctly stated the law. It is well settled that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. *Van Steensburg* v. *Lawrence & Memorial Hospitals,* 194 Conn. 500, 507, 481 A.2d 750 (1984); *Oberempt* v. *Egri,* 176 Conn. 652, 656, 410 A.2d 482 (1979); *State* v. *Cardona,* 6 Conn. App. 124, 504 A.2d 1061 (1986); *State* v. *Biller,* 5 Conn. App. 616, 622, 501 A.2d 1218 (1985). The test is whether the charge as a whole fairly presented the case so that no injustice was done. *Kosko* v. *Kohler,* 176 Conn. 383, 390, 407 A.2d 1009 (1978); *State* v. *Cardona,* supra. The charge in this case firmly fixed the legal obligation to prove his case upon the plaintiff and no fair reading of the charge can lead to any other conclusion.

The defendants' final claim, that the court incorrectly charged on damages for conversion, is also without merit. The court's charge correctly instructed the jury that in order to assess damages in conversion they were to determine, from the evidence, the market value of property at the time of the conversion. The court went on to define the market value and then stated that if the plaintiff failed to prove the market value to the satisfaction of the jury, they could not award him substantial damages. The court also stated that the plaintiff was entitled to fair compensation for his loss and

then said: "if you conclude that the market value—if you find a market value does not truly measure such compensation to him; and if you so conclude, you should award him such a sum as in your sound judgment you decide will fairly compensate him, under all the circumstances, for his actual money loss." The court did not misstate the law under the circumstances in this case. There is no question that the plaintiff purchased the machines for an investment and had no use for the machines outside of the special and peculiar value the machines represented to him as an investment. The court's charge is within the parameters of the rule stated in *Kuzemka* v. *Gregory,* 109 Conn. 117, 122, 146 A. 17 (1929). There, the court, after stating the general rule that the measure of damages is the value of goods on the date of the conversion, went on to state: "In determining this value it is generally sufficient to show the money value of the goods in the market at that time, since the cost of replacement ordinarily represents the owner's actual loss. The underlying purpose of the rule is to give full money compensation to the plaintiff for the loss he has suffered by the conversion, and where articles have a market value which can be established, the rule above referred to is held to accomplish that purpose for the reason given. Where . . . in the case of goods having a special and peculiar value to the owner, then full compensation requires that he recover 'the value to him based on his actual money loss, all the circumstances and conditions considered, resulting from his being deprived of the property . . . .' "

The damages awarded by the jury are sustainable under either of the alternatives stated above. The machines were only four months old at the time of the conversion and the purchase price paid is evidence of the market value which, with interest added, fully supports the verdict. The amount of damages is also a mea-

sure of the plaintiff's actual money loss, all the circumstances and conditions considered, particularly in this case where the owner was an investor and the machines were of no use to him per se, but had a special and peculiar value to him as an investment. "The cardinal rule [of damages] is that a person injured shall receive fair compensation for his loss or injury and no more." *Barker* v. *Lewis Storage & Transfer Co.*, 78 Conn. 198, 200, 61 A. 363 (1905). It is axiomatic that he should not receive less than fair compensation.

In summation, the obviously unauthorized use of the plaintiff's property by the defendants clearly obviates the requirement that the plaintiff make demand for return of the machines to enable him to recover in conversion. Further, the trial court's charge as to the burden of proof and as to the measure of damages, when read as a whole and in the circumstances of this case, were given in accordance with the law.

There is no error.

In this opinion the other judges concurred.