ADOLPH LUCIANI ET AL. *v.* THE STOP & SHOP
COMPANIES, INC.
(4612)

BORDEN, BIELUCH and O'CONNELL, Js.

Argued November 10, 1987—decision released August 9, 1988

*Jeffrey J. Mirman,* with whom, on the brief, was *Peter Schwartz,* for the appellant (defendant).

*William F. Gallagher,* with whom, on the brief, were *Frank M. Gazioso* and *Robert P. Borquez,* for the appellees (plaintiffs).

O'CONNELL, J. The defendant corporation appeals from the judgment rendered on a plaintiffs' verdict in an action for property damage and conversion of fixtures arising out of a commercial lease dispute. The defendant alleges that the trial court erred (1) in not charging the jury that the plaintiffs were required, as a matter of law, to demand return of the property in order for an action in conversion to obtain, (2) in charging the jury on the issue of punitive damages, and (3) in improperly presenting the plaintiffs' claims to the jury in its instruction.[1] We find error in part.

The jury could reasonably have found the following facts. The plaintiffs were the successors in interest to a corporation which entered into a commercial lease with the defendant in 1961. Pursuant to the lease, the plaintiffs constructed the premises in question in accordance with the defendant's specifications. Article XII of the lease, regarding removal of fixtures, provided in pertinent part that all equipment installed "by and at the expense of [the defendant] and susceptible of being removed from the demised premises without substantial injury thereto, shall remain the property of [the defendant], and [the defendant] may, but shall not be obligated to, remove the same or any part thereof at any time or times during the term hereof."

The defendant operated a supermarket on the premises in question for more than eighteen years. In 1979, the defendant ceased its operation at that location. The defendant removed its inventory, equipment and fixtures from the store pursuant to article XII of the original lease, which remained in effect during a move to a new location. The defendant followed its established "Store Closing Procedure Guide" in vacating the premises, and engaged several subcontractors to remove the fixtures which are the subject of this appeal. The

---

[1] See footnote 4, infra.

defendant had determined the fixtures were its own; however, the plaintiffs claimed the fixtures as their property.

At trial, the plaintiffs alleged that they had been denied access to the premises during the store closure and that, upon being allowed entry, they discovered that the defendant had removed not only its own property, but also property claimed to be owned by the plaintiffs. The plaintiffs further alleged damages resulting from removal of the defendant's sign from the exterior front "parapet wall" of the building, and from abuse of the premises beyond the "fair wear and tear" allowed under the terms of the lease agreement.

At the close of the plaintiffs' case, the plaintiffs moved to amend their complaint to expand their claim for punitive damages. Despite the defendant's objection, the amendment was allowed. The jury returned a plaintiffs' verdict on the breach of contract and conversion counts,[2] and awarded the plaintiffs compensatory damages of $43,946.03 and punitive damages of $31,830.15, the amount of the plaintiffs' attorney's fees.

I

The defendant's first claim that the trial court erred in instructing the jury that, under the facts of the present case, the plaintiffs were not required to make a demand upon the defendant in order to establish their cause of action in conversion. We disagree.

The tort of conversion boasts a well established definition which is not disputed by the parties. "Conversion occurs when one, without authorization, assumes and exercises the right of ownership over property belonging to another, to the exclusion of the owner's rights. *Falker* v. *Samperi*, 190 Conn. 412, 419, 461 A.2d

---

[2] Although the defendant's complaint alleged both, only the verdict regarding the allegation of conversion is on appeal.

681 (1983)." *Epstein* v. *Automatic Enterprises,* 6 Conn. App. 484, 488, 506 A.2d 158 (1986). The seminal case in this state regarding conversion is *Coleman* v. *Francis,* 102 Conn. 612, 129 A. 718 (1925), cited by both parties in their briefs. *Coleman* established that there are two "general classes" of conversion: (1) that in which possession of the allegedly converted goods is wrongful from the onset; and (2) that in which the conversion arises subsequent to an initial rightful possession. Id., 615.

In the latter class, the one at issue in the present case, there are three forms which conversion may take. Classification of a particular conversion into one of these three forms determines whether a demand is required for the establishment of a cause of action. "The second class is where the possession, originally rightful, becomes wrongful by [1] reason thereafter of a wrongful detention, or [2] a wrongful use of the property, or [3] the exercise of an unauthorized dominion over the property. In the last two groups of this class, *the wrongful use and the unauthorized dominion, constitute the conversion; therefore no demand for the return of the personal property is required.*" (Emphasis added.) Id., 616. Demand is only required in the "detention" scenario because, by definition, a rightful possession cannot become a "detention" until a possessor fails to comply with a request to quit possession made by the rightful owner. "[S]ince the possession is rightful . . . there can be no conversion until the possessor refused to deliver up the property upon demand." Id. The wrongful use or dominion which characterize the remaining forms of conversion after rightful possession, however, change the character of the possession itself. Therefore, these actions, when taken by a possessor, constitute sufficient demarcation of a substantial change in the status of the relationship of the parties to each other, and to the property in question.

Accordingly, the requirement of demand is unnecessary. See *Epstein* v. *Automatic Enterprises, supra,* 488–89, where "the defendants' assertion that the plaintiff was required to demand the return of the machines to recover in conversion [was] without merit. . . . Under the facts of this case, the jury could readily find that a conversion occurred by a wrongful taking or an illegal assumption of ownership wholly unauthorized by the plaintiff."

The conversion which occurred in the present case originated in rightful possession and was consummated by the destruction of the plaintiffs' property. We conclude that it was of the form of conversion characterized by the court in *Coleman* v. *Francis* as "wrongful use." By destroying the plaintiffs' property, the defendant " ' "exercise[d] the right of ownership over goods belonging to another, to the exclusion of the owner's rights." ' " *Falker* v. *Samperi, supra,* 419; *Epstein* v. *Automatic Enterprises, supra,* 488. As more explicitly stated in 1 Restatement (Second), Torts § 226: "One who intentionally destroys a chattel or so materially alters its physical condition as to change its identity or character is subject to liability for conversion to another who is in possession of the chattel or entitled to its immediate possession." A review of the record indicates that the defendant's employees and agents *intentionally* destroyed the property in question. Such an intent, despite the absence of an intent to harm the plaintiffs' interests, is sufficient to establish an action in conversion. "The intention required is an intention merely to exercise a dominion or control over the chattel which in fact seriously interferes with the right of another to control it. It is not an intention to interfere with the rights of the other; and the defendant may be liable for conversion where he has in fact exercised dominion or control, although he may be quite unaware of the existence of the rights with which he interferes.

Thus, he may be a converter when he dispossesses another of a chattel in the entirely reasonable belief that it is his own, or where he innocently buys stolen goods." 1 Restatement (Second), Torts § 224, Nonfeasance & Negligence, comment c. Intention.

We further note that even if the defendant's employees and agents mistakenly believed that they were destroying only the defendant's property, such belief is of no consequence. "An actor is not relieved of liability to another for trespass to a chattel or for conversion by his belief, because of a mistake of law or fact not induced by the other, that he (a) has possession of the chattel or is entitled to its immediate possession, or (b) has the consent of the other or of one with power to consent for him, or (c) is otherwise privileged to act." Id., § 244, Effect of Mistake. The record indicates that the jury could reasonably have found that destruction of the plaintiffs' property was already substantially effected by the time the plaintiffs were allowed access to the premises. The record further indicates that one of the plaintiffs remarked to one of the defendant's subcontractors at the site that the subcontractor was dismantling the property of both the defendant *and* the plaintiffs. We conclude, however, that at that point the plaintiffs' property was "so materially alter[ed in] its physical condition as to change its identity or character," and, therefore, the conversion had already occurred. Id., § 226. At this point in the chronology of events, and, more importantly, with this form of conversion, demand was not a requisite element of the cause of action. "It is clear from the authorities that demand and refusal are necessary only where no conversion has yet taken place and evidence of conversion is required." *Pascack Valley Bank & Trust Co.* v. *Ritar Ford, Inc.,* 6 Conn. Cir. 489, 501, 276 A.2d 800 (1970). " 'Demand and refusal are never necessary, except to furnish evidence of the conversion, and when, without

these, the circumstances are sufficient to prove the conversion, they are superfluous.' " *Coleman* v. *Francis,* supra, 616; 18 Am. Jur. 2d, Conversion § 84. Under the facts of the present case, we conclude that the plaintiffs were not required to issue a demand before an action in conversion would lie, and conclude that the trial court's failure to instruct the jury that a demand was required, was not erroneous.

## II

The defendant next claims that the trial court erred in instructing the jury with regard to punitive damages. We agree.

"As a general matter, '[p]unitive damages, applying the rule in this state as to torts, are awarded when the evidence shows a reckless indifference to the rights of others or an intentional and wanton violation of those rights.' *Collens* v. *New Canaan Water Co.,* 155 Conn. 477, 489, 234 A.2d 825 (1967); see also *Kenny* v. *Civil Service Commission,* 197 Conn. 270, 277, 496 A.2d 956 (1985); *Vandersluis* v. *Weil,* 176 Conn. 353, 358, 407 A.2d 982 (1978). 'In fact, the flavor of the basic requirement to justify an award of punitive damages is described in terms of wanton and malicious injury, evil motive and violence. *Triangle Sheet Metal Works, Inc.* v. *Silver,* 154 Conn. 116, 128, 222 A.2d 220 (1966).' *Venturi* v. *Savitt, Inc.,* 191 Conn. 588, 592, 468 A.2d 933 (1983)." *Ames* v. *Sears, Roebuck & Co.,* 8 Conn. App. 642, 654–55, 514 A.2d 352, cert. denied, 201 Conn. 809, 515 A.2d 378 (1986).

The record in the present case is devoid of any evidence that the actions of the defendant, in failing to allow the plaintiffs immediate access to the premises, in removing the plaintiffs' fixtures, in removing its own property, and in allegedly failing to leave the premises in good repair, constituted reckless indifference or an intentional and wanton violation of the plaintiffs' rights.

The amendment of the plaintiffs' complaint during trial, to allege that the actions of the defendant constituted reckless indifference or intentional and wanton violations of the plaintiffs' rights, simply did not suffice to justify the instruction on punitive damages. "To furnish a basis for recovery [for punitive] damages, the pleadings must allege, *and the evidence must show wanton or wilful malicious misconduct.* . . ." (Emphasis added.) *Markey* v. *Santangelo,* 195 Conn. 76, 77, 485 A.2d 1305 (1985); see *Vandersluis* v. *Weil,* supra, 358. The plaintiffs complied with only one portion of the requisite burden of proving that punitive damages were warranted. Simply stating that the actions constituted conduct of the degree required for an award of punitive damages, without demonstrating how those actions did so, does not justify the instruction.[3]

## III

The defendant's final claim of error[4] is that the trial court's instruction to the jury was erroneous, as it pre-

[3] The defendant also alleges as a subissue that the trial court abused its discretion in allowing the amendment of the complaint during trial, to add an allegation that the defendant acted recklessly in denying the plaintiffs access to the premises in question, in removing the plaintiffs' property and in damaging the premises. Our review of the record indicates that the defendant has failed to demonstrate a clear showing of abuse of discretion in the trial court's actions. *Sansone* v. *Lettieri,* 4 Conn. App. 466, 467, 495 A.2d 720 (1985); *Wadsworth* v. *Zahariades,* 1 Conn. App. 373, 375, 472 A.2d 29 (1984). We decline to address the claim further, in light of our conclusion that the trial court erred in allowing the instruction on punitive damages.

[4] In addition, the defendant alleged in a footnote that the trial court abused its discretion in allowing the plaintiffs to reopen their case-in-chief to present evidence of their status as successors-in-interest to Luciani Realty, Inc., the original lessor of the premises at issue. We agree with the rationale propounded by the venerable Chief Justice Maltbie in *Hauser* v. *Fairfield,* 126 Conn. 240, 242, 10 A.2d 689 (1940), which provides in pertinent part that "[I]f a trial court feels that, by inadvertence or mistake, there has been a failure to introduce available evidence upon a material issue in the case of such a nature that in its absence there is serious danger of a miscarriage of justice, it may properly permit that evidence to be introduced at

sented the plaintiffs' claims to the jury as proven, but failed to present the defendant's claims in the same manner. Upon reviewing the charge, we conclude that the instruction was not " 'so drawn as to direct the attention of the jury too prominently to the facts in the testimony on one side of the case, while sinking out of view, or passing lightly over, portions of the testimony on the other side, which deserve equal attention.' " *Anderson & McPadden, Inc.* v. *Tunucci,* 167 Conn. 584, 591, 356 A.2d 873 (1975). We further conclude that the trial court, at several points during the charge to the jury, gave cautionary instructions, reminding the jury that it was its perception of the facts, and not the court's, which was to serve as the basis for its deliberations. We acknowledge that while such corrective instructions will not cure an unfair charge, such cautionary instructions do "tend to remove any doubts that the court properly discharged its duty of leaving the jury free to determine the facts and draw their own conclusions therefrom." Id., 594. We find no error in the trial court's instruction.

There is error in part, the award of punitive damages is set aside and the case is remanded with direction to render judgment consistent with this opinion.

In this opinion the other judges concurred.

---

any time before the case has been decided." The record indicates that the trial court viewed the motion to reopen in this light, and acknowledged that it was "[the trial court's] function to see that justice is done," and characterized the plaintiffs' failure to present evidence as "a mere technicality." Accordingly, we conclude that the trial court did not abuse its discretion. Cf. *Poly-Pak Corporation of America* v. *Barrett,* 1 Conn. App. 99, 104, 468 A.2d 1260 (1983) (the discretionary denial of a motion to open was not error when the trial court determined that plaintiff's failure to present evidence did not constitute inadvertence or mistake).