STATE OF CONNECTICUT *v.* RICHARD J. JANULAWICZ
(AC 25588)

Schaller, DiPentima and McLachlan, Js.

Argued February 21—officially released May 23, 2006

*Deron Freeman*, for the appellant (defendant).

*Jessica Probolus*, special deputy assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Vernon D. Oliver*, former assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Richard J. Janulawicz, appeals from the judgment of conviction rendered after the trial court accepted his conditional plea of nolo

contendere[1] to two counts of criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1), two counts of carrying a dangerous weapon in violation of General Statutes § 53-206 (a) and one count of threatening in the second degree in violation of General Statutes § 53a-62 (a) (1). The court accepted the defendant's conditional plea after it denied his motion to suppress. On appeal, the defendant claims that the court improperly found that his girlfriend had consented to the initial search of his home. We affirm the judgment of the trial court.

In ruling on the defendant's motion to suppress, the court found the following facts. On October 4, 2002, at approximately midnight, Officers Scott Werner and Todd Kozaryn of the Bristol police department responded to a 911 call alleging a domestic disturbance. The call was made by a female complainant, who indicated that the disturbance was occurring at a "one-family" residence located at 73 Summer Street in Bristol.

When the officers arrived, the female complainant, Kristen Duren, came out of the home in her pajamas and met the officers on the front porch of the residence. Duren explained to the officers that the defendant, who was her boyfriend and the father of her baby, had been drinking and had become "mouthy" toward her. She indicated that she wanted the officers to speak to him

---

[1] General Statutes § 54-94a provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law provided a trial court has determined that a ruling on such motion to suppress or motion to dismiss would be dispositive of the case. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

and informed them that he was "upstairs in their shared bedroom." Werner then asked Duren if he could go upstairs and speak to the defendant. Duren responded in the affirmative and motioned toward the upstairs bedroom. Thereafter, Werner proceeded into the home and toward the upstairs bedroom. As Werner reached the second floor landing, he encountered the defendant, who was holding a long gun. Werner immediately retreated outside the home.

It is undisputed that an extended standoff between the defendant and the police ensued that concluded with the defendant's eventual surrender to police officers. Following the defendant's arrest, the police requested that Duren sign a consent to search form in order to allow them to enter the home and to search for weapons. Duren signed the consent form, and the police subsequently recovered a rifle, a shotgun and a bag of ammunition from the residence.

On June 27, 2003, the defendant filed a motion to suppress all items seized from his home, arguing that the search and seizure was illegal in that it was conducted without a warrant and without sufficient legal justification. On January 14, 15 and 16, 2004, the court held a hearing on the defendant's motion to suppress. At the suppression hearing, the defendant's main arguments were that Duren lacked the authority to consent to a search of the residence and that Duren actually did not consent to Werner's initial entry into the home. With respect to the former, Duren testified that she and the defendant resided in separate apartments within 73 Summer Street. As to the latter, Duren testified that she was asked only where the defendant was located and replied that "he's upstairs" while motioning toward the staircase. According to Duren, the officers never requested, and she never gave, her consent to Werner's initial entry, and it was never her intent to allow the officers to enter the home. Both Werner and Kozaryn

testified that they asked Duren "where the male part of this complaint was," and she responded that "he's upstairs in the bedroom" and pointed toward the staircase. Werner further testified that he then asked if he could go in to speak to the defendant and that Duren had responded in the affirmative. Kozaryn also testified that he believed Duren had given the officers permission to enter the home and to speak to the defendant. Werner and Kozaryn did acknowledge, however, that neither specifically had asked Duren for "permission" or "consent" to enter the home.

In ruling on the defendant's motion to suppress, the court found Duren's testimony that she and the defendant resided in separate residences to be a "recent fabrication intended solely for the purpose of establishing a basis for the defendant's motion to suppress." The court further concluded that there was credible evidence that Duren "requested and directed the police to go inside the residence and talk to the defendant . . . ." Accordingly, on January 20, 2004, the court denied the defendant's motion to suppress and, on April 6, 2004, issued a written memorandum of that decision.

The defendant thereafter entered a conditional plea of nolo contendere to the charges of two counts of criminal possession of a firearm, two counts of carrying a dangerous weapon and one count of threatening in the second degree. The court accepted the defendant's plea and, on May 13, 2004, sentenced him to a total effective term of ten years imprisonment, execution suspended after seven years, and three years of probation. This appeal followed.[2]

---

[2] The court did not indicate on the plea form whether its ruling on the motion to suppress was dispositive of the case. Consequently, during the pendency of this appeal, the state moved to remand the matter for a determination of whether the denial of the defendant's motion to suppress was dispositive. This court granted the state's motion, and on October 11, 2005, the trial court issued a written memorandum indicating that its ruling on the motion was indeed dispositive.

The defendant's sole claim on appeal is that Duren did not consent to Werner's initial entry into the home. The defendant presently does not challenge Duren's authority to consent to the search, nor is he arguing that she was coerced in any way.[3] Rather, in support of his claim, the defendant argues that the court's finding that Duren consented to Werner's initial entry into the defendant's residence was not supported by the evidence and is clearly erroneous. We disagree.

"On appeal, we apply a familiar standard of review to a trial court's findings and conclusions in connection with a motion to suppress. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . The conclusions drawn by the trial court will be upheld unless they are legally and logically inconsistent with the evidence." (Internal quotation marks omitted.) *State v. Douros*, 90 Conn. App. 548, 553, 878 A.2d 399, cert. denied, 276 Conn. 914, 888 A.2d 85 (2005). "Because a trial court's determination of the validity of a . . . search . . . implicates a defendant's constitutional rights, however, we engage in a careful examination of the record to ensure that the court's decision was supported by substantial evidence. . . . *However, [w]e [will] give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses.*" (Emphasis in original; internal quotation marks omitted.) *State v. Paradis*, 91 Conn. App. 595, 607–608, 881 A.2d 530 (2005).

---

[3] In his motion to suppress, as well as his statement of the issues, the defendant claimed that the court improperly found that Duren had "apparent and/or actual authority to consent to a search of the defendant's residence." The defendant, however, has not briefed this issue on appeal and, accordingly, it is deemed abandoned. See *State v. Abraham*, 84 Conn. App. 551, 561, 854 A.2d 89 ("[a]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court" [internal quotation marks omitted]), cert. denied, 271 Conn. 938, 861 A.2d 514 (2004).

"On a motion to suppress, [i]t is the function of the trier to determine the credibility of witnesses and the weight to be given their testimony. . . . It is axiomatic that searches and seizures inside a home without a warrant are presumptively unreasonable. . . . A warrantless search or entry into a house is not unreasonable, however . . . when a person with authority to do so has freely consented. . . . It is the state's burden to prove that the consent was freely and voluntarily given, and that the person who purported to consent had the authority to do so. . . . Such consent may not be established by mere acquiescence to police authority. . . . Whether there was valid consent to search is a factual question that will not be lightly overturned on appeal." (Internal quotation marks omitted.) *State* v. *Douros*, supra, 90 Conn. App. 554.

In the present case, there was ample evidence from which the court could conclude that Duren consented to Werner's initial entry into the home. As noted previously, testimony was adduced at the suppression hearing that Duren initiated the contact with the police and specifically requested that they speak to the defendant.[4] Furthermore, both Werner and Kozaryn testified that they asked Duren "where the male part of this complaint was," and that she responded that "he's upstairs in the bedroom" and pointed toward the staircase.[5] In addition, Werner further testified that he then

---

[4] It is uncontested that, subsequent to the defendant's arrest, Duren signed a written consent to search form. Although this fact would not serve to remedy a prior illegal search, the court noted that Duren's subsequent written consent constituted support for her original intention to consent to Werner's initial entry into the residence.

[5] We previously have found similar conduct sufficient to constitute consent. In *State* v. *Cardona*, 6 Conn. App. 124, 132, 504 A.2d 1061 (1986), the police arrived at a defendant's home, and a female resident answered the door. One of the officers asked the woman whether the defendant was home, and she instructed them that the defendant was upstairs and proceeded to open the door wider. Id. When the officer once again asked for the defendant, the woman "backed up, gestured up the stairs and stated that the defendant was upstairs." Id. On appeal, this court concluded that in viewing the totality

asked if he could go in to speak to the defendant and that Duren responded in the affirmative.[6] Although it is true that Duren disputed the officers' account of this interaction, it is axiomatic that "[w]here there is conflicting testimony, it is uniquely the function of the trier of facts to weigh the evidence and assess the credibility of witnesses." (Internal quotation marks omitted.) *State* v. *Douros*, supra, 90 Conn. App. 556. The court expressly found the officers' testimony more credible than that of Duren, and it was within its province to do so.

On the basis of our careful review of the record and the court's findings, we conclude that the court's determination that Duren consented to Werner's initial entry into the home was not clearly erroneous. The court, therefore, properly denied the defendant's motion to suppress.

The judgment is affirmed.

In this opinion the other judges concurred.

---

of the circumstances, consent to enter the residence validly was given. Id., 134–35.

[6] We note that the fact that neither Werner nor Kozaryn specifically asked for "consent" or "permission" to enter the home is not dispositive. Connecticut courts have refused to attach talismanic significance to the presence or absence of particular words or phrases. See, e.g., *State* v. *Robinson*, 227 Conn. 711, 731, 631 A.2d 288 (1993) (failure to use "talismanic" words does not indicate failure to make necessary determination); *State* v. *Onofrio*, 179 Conn. 23, 45, 425 A.2d 560 (1979) ("[t]here is no talismanic ritual of words that must be spoken by a dying declarant" to render statements admissible); *State* v. *Peters*, 89 Conn. App. 141, 146, 872 A.2d 532 ("the fact that the court did not use the specific words 'psychiatric disabilities' does not warrant reversal under the plain error doctrine"), cert. denied, 274 Conn. 918, 879 A.2d 895 (2005); *State* v. *Peters*, 40 Conn. App. 805, 823, 673 A.2d 1158 (jury charge not improper for failure to recite talismanic words), cert. denied, 237 Conn. 925, 677 A.2d 949 (1996).