[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION IN RE DEFENDANTS' MOTION TO STRIKE THE FOURTH, FIFTH, SIXTH, SEVENTH, EIGHTH AND NINTH COUNTS OF PLAINTIFF'S AMENDED COMPLAINT DATED JANUARY 15, 1990
I
The Connecticut National Bank ("CNB"), in its amended complaint dated November 1, 1989, filed a nine-count action against Louis and Kathleen DiCocco. CNB alleges that Louis DiCocco ("DiCocco") personally guaranteed in writing to it the liabilities of Liberty Health Plans, Inc. ("Liberty"), Family Walk-In Medical Center, Inc. ("Family"), Empire Physical Therapy Rehabilitation and Sports Medicine, Inc. ("Empire"), and Alternative Health Care Systems, Inc. ("Alternative"). Exhibits A-D attached to the amended complaint.
To secure these written guarantees, CNB also alleges that DiCocco assigned to it a certificate of deposit with another bank; orally promised to surrender that certificate upon its maturity date; but failed to do so. Bottomed on this failure to surrender, CNB complains that DiCocco has stolen the certificate and has converted converted it to his own use.
By their motion to strike, the defendants, Louis and Kathleen DiCocco, claim that the fourth, fifth, seventh and ninth counts, brought under the Connecticut Unfair Trade Practices Act, are legally insufficient. Additionally, the defendants claim that the CNB has not pled a case of theft in count 6, nor a case of conversion in count 8. This motion to strike is granted in part and denied in part.
II CT Page 1404
Count 1 of the amended complaint reveals a simple collection action against DiCocco on each of the written guarantees given by him to CNB. Count 2 alleges that DiCocco transferred Watertown, Connecticut real estate to the defendant Kathleen DiCocco with the intent to defraud CNB, his creditor. Count 3 realleges the same fraudulent realty transfer to Kathleen DiCocco as in count 2, but further claims that conduct also constitutes a violation of section 52 — 552 of our statutes.[1] Count 4 again alleges the fraudulent realty transfer, but claims that such conduct by DiCocco is also a violation of the Connecticut Unfair Trade Practices Act. Section42-110a, et seq., Conn. Gen. Stat. Count 5 incorporates the fraudulent transfer of realty claim under section 52-552, as set forth in count three, and further alleges that such conduct also constitutes a CUTPA violation.
CNB, in count 6, alleges that DiCocco, to secure his personal written guarantees given by him in behalf of Liberty, Family, Empire and Alternative, assigned, by a writing on March 31, 1989, to CNB the certificate of deposit with another bank; orally promised to deliver that certificate on its maturity date, April 4, 1989; but failed to do so. In this count, CNB further alleges that DiCocco's acts constitute a theft of the certificate or its proceeds; and in count 7, CNB complains that the same conduct set forth in the sixth count constitutes a CUTPA violation. In count 8, CNB claims that DiCocco's conduct surrounding the certificate of deposit also constitutes a conversion; and in count 9, suggests that such tortious conduct in conversion is also a violation of CUTPA.
Throughout the nine counts of the amended complaint, Louis and Kathleen DiCocco are styled as "individuals". In this pleading, Louis DiCocco is also described as having "personally guaranteed" the liabilities of Liberty, Family, Empire and Alternative by virtue of a "guarantee agreement" with CNB and each count is bottomed upon a complaint arising out of either Louis DiCocco's personal activity or Kathleen DiCocco's being the personal beneficiary of a fraudulent transfer so as to avoid CNB, a creditor.
 III
It is the purpose of a motion to strike to contest the legal sufficiency of any claim upon which relief can be granted. Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 170 (1988). "[I]n ruling on a motion to strike, the court must construe the facts alleged in the complaint in the manner most favorable to the plaintiff." Rowe v. Godou, 209 Conn. 273, 278 (1988). The motion itself "admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." Mingachos v. CBS, Inc., 196 Conn. 91, 108 (1985) (emphasis in original).
IV CT Page 1405
The Connecticut Unfair Trade Practices Act prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Section 42-110b Conn. Gen. Stat. (emphasis supplied). The Act inter alia is consumer protection legislation of a remedial nature. Id.
The defendants seek to strike counts 4, 5, 7 and 9 brought under CUTPA because CNB has not alleged that the defendants' actions were done in the conduct of any "trade" or "commerce". In a nutshell, they suggest that the CUTPA counts in the amended complaint sound against them in their individual capacities as customers of the bank and fail to allege meaningfully that their complained of conduct was part of and connected to any trade or commerce. Upon reviewing the amended complaint, we agree with the defendants' contentions.
CNB suggests that we might construe the statutory terms "trade" and "commerce" broadly enough to encompass the allegations here of fraudulent conveyance or theft or conversion of collateral. Memorandum in Support of Objection to Defendants' Motion to Strike, dated March 21, 1990, at 8. While CUTPA is remedial legislation, it is focused on consumer protection. The statutory terms in the Act "trade" and "commerce", in our opinion, are plain and unambiguous and should be construed as they facially indicate. Kelemen v. Rimrock Corporation, 207 Conn. 599, 606 (1988); Verrastro v. Sivertsen,188 Conn. 213, 220 (1982). In counts 4, 5, 7 and 9, the bank essentially complains about what these two defendants, as individuals and bank customers, have done is to commit a theft; a conversion; or a fraudulent conversion; and have then alleged a conclusory claim that this conduct also constitutes a CUTPA violation. That pleading architecture is legally insufficient.
CNB, in its brief, notes that there is a split of authority in this court as to whether CUTPA applies to banks and banking activity. It argues that if we accept here that CUTPA does apply to banking activity, we ought not strike the counts of the amended complaint in question. However, each of the cases cited favorably by CNB involves a suit brought against a bank and not, as here, numerous claims by the bank against its customer. Objection to Defendants' Motion to Strike, dated March 21, 1990, at 6-7. Since CUTPA is consumer protection legislation, in our opinion the defendants, particularly Kathleen DiCocco, who is styled in this amended complaint as a passive transferee, correctly highlight the incongruity of allowing the bank to invoke consumer protection legislation against persons described as bank customers. Defendants' Reply Brief to Plaintiff's Objection to Defendants' Motion to Strike, dated April 16, 1990, at 10. See Burkert v. Petrol Plus of Naugatuck, Inc., 216 Conn. 65, 85
(1990); Dadonna v. Liberty Mobile Home Sales, Inc., 209 Conn. 243,257 (1988). — At oral argument, upon the court's inquiry, counsel for CNB indicated that its position is that CUTPA does not apply to CT Page 1406 banks. Transcript, oral argument of April 16, 1990, at 15.
 V
CNB also alleges that DiCocco executed as security for his written guarantees an assignment of a certificate of deposit held in another banking institution, the Connecticut Bank and Trust Company. In the sixth count, it is claimed that when assigning the certificate, the defendant orally promised to deliver that instrument to CNB upon maturity, April 4, 1989. The Assignment of Certificate of Deposit, executed by DiCocco, provides, in part, that "as collateral security [DiCocco] does hereby assign and transfer to and pledge with and to. . . [CNB] all right, title and interest. . . in and to the Certificate. . . ." Amended Complaint, dated November 1, 1989, Exhibit F. This document also provides that upon default, the funds represented by the certificate might be applied to DiCocco's liabilities to CNB and the assignment instrument additionally establishes CNB as DiCocco's attorney to obtain the monies represented by the CD.
In count 6, CNB alleges that DiCocco intentionally and wrongfully withholds the CD "or the proceeds thereof" from the plaintiff bank and that these acts "constitute a theft of the CNB collateral." In count 8, CNB claims that the wrongful withholding of the certificate of deposit in these circumstances "constitutes a conversion of the certificate of deposit."
The defendants move to strike both counts 6 and 8 as legally insufficient since DiCocco owns the certificate and the bank, having only a security interest in the CD, it is suggested, has not pled a sufficient ownership interest in the CD to make legally viable these two counts. — We disagree. Concerning count 6, theft itself is "[a] popular name for larceny." Black's Law Dictionary, Fifth Edition (1979); see Lauder v. Peck, 11 Conn. App. 161, 167 (1987). Additionally, our penal code provides that "[a] person commits larceny when, with the intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner." Section53a-119 Conn. Gen. Stat. "Owner" is not easily defined in our law. Smith v. Planning Zoning Board, 203 Conn. 317, 322 (1987). It customarily connotes the person who has legal or rightful title. Warner v. Leslie-Elliot Constructors, Inc., 194, Conn. 129, 137 (1984). "Owner" in our penal code is defined as "any person who has a right of possession superior to that of a taker, obtainer, or withholder." Section 53a-118 (5) Conn. Gen. Stat. — On the face of count 6, we think CNB has pled a sufficient ownership interest to present a legally sufficient claim in theft.
Regarding the eighth count, conversion is "an unauthorized assumption and exercise of the right of ownership over the goods CT Page 1407 belonging to another, to the exclusion of the owner's rights." Falker v. Samperi, 190 Conn. 412, 419-20 (1983) (citations omitted). Again, by DiCocco's executing the assignment of the certificate of deposit, and promising to deliver it upon maturity, we think that CNB has alleged a sufficient ownership interest in the CD to present a viable cause of action in conversion. Of course, a wrongful detention, even though initially rightfully obtained, may constitute a conversion. Bruneau v. W. W. Transportation Co., 138 Conn. 179, 182-83 (1951); see Luciani v. Stop Shop Cos., 15 Conn. App. 407, 409-412 (1988); Horelik v. Roth, 15 Conn. App. 649, 652 (1988).
The motion to strike counts 4, 5, 7 and 9 is granted. The motion is denied as to counts 6 and 8.
Orders may enter accordingly.
WILLIAM PATRICK MURRA, J. A Judge of the Superior Court