[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is the second and third of three lawsuits arising out of the business relationship that existed between James R. Sanders and Earl I. Williams from 1975 through 1988. In Sanders v. Williams, #CV88-028534-S the plaintiff in that first case, Sanders, sought to prove that he and Earl Williams were partners from 1975 to 1988. This court held, that no such partnership existed, opinion dated 3/7/91.
The third lawsuit was filed by Earl Williams against Need Action Federal Credit Union (hereinafter NACU). CT Page 5059
In that case, Earl Williams d/b/a Keyes Williams Funeral Home v. Need Action Federal Credit Union, #CV-89-90285310-S, allege that NACU improperly opened business accounts for and under the name of James Sanders. Those accounts in NACU were opened at the request of James R. Sanders. On information and belief of the plaintiff and on various dates over a five and one half year period 1984-1988, checks drawn by various parties were delivered, to the plaintiff Keyes Funeral Homes, Inc., that were made payable to the order of the funeral business. The Credit Union accepted these checks when they were tendered by the Funeral Home employee James R. Sanders, and allowed them to be deposited by him and credited to the accounts of James R. Sanders, and to be subsequently withdrawn by him. As Mr. Sanders had no authority to place these checks in his personal account, any endorsements he made on the backs of these checks that purported to be that of the plaintiff funeral home was a forgery.
By facilitating and participating in this action NACU is liable to the plaintiff Keyes Funeral Homes, Inc., and Keyes-Williams Funeral Home, for conversion of these checks.
That lawsuit has been consolidated with the present case, Keyes Funeral Home, Inc. v. Sanders, #CV 88-0271449-S, by agreement of the parties.
The plaintiff alleges the hiring of Sanders as a funeral director and general manager of the Keyes-Williams Funeral Home, the failure of Sanders to make any accounting for various accounts collected, despite many demands to do so.
The plaintiff seeks various injunctive reliefs, accountings, compensatory and punitive damages, reasonable attorneys fees, prejudgment interest and costs.
The court first began to hear these 3 cases on November 19, 1990. The trials continued on divers days until early 1992.
Briefs were filed with the court and all matters were concluded in the latter part of April 1992.
Mr. Sanders as defendant testified on direct and cross examination for many days. The overall general impression the court received from listening to Mr. Sanders was that he (Sanders) only told the truth when it served his purposes to do so. This was apparent throughout. He said he never kept records of the business, because, "Mr. Williams, who is an experienced lawyer, said he'd take care, of all of the business." He did not pay the I.R.S. with any degree of regularity as an employee, who did receive W2 forms from Mr. Williams, nor did he pay the I.R.S. as a CT Page 5060 business owner as he alleged.
He did not tell Mr. Williams what business he did in Waterbury, what monies he collected, or did not collect, or what was collectible etc. He had no concept or so he said, in response to the courts questions, as to what, an "account receivable" was.
He claimed he used Keyes-Williams Funeral Home money to pay vendors and business related expenses. But, he kept no records of some and subsequent testimony indicated that Keyes-Williams paid these expenses.
He claimed in testimony, to have made many expensive improvements to the Keyes-Williams Funeral Home in Waterbury, and to have purchased expensive furnishing and needed equipment also with funeral home money, and/or his money. Subsequent testimony of Mr. Williams with proof in the form of cancelled paid checks, and a witness who testified as to the value of the "expensive" purchase Mr. Sanders allegedly made, proved to the courts satisfaction that Mr. Sanders had been less than candid in his assertions and testimony.
He did not collect for numerous funerals including many welfare funerals.
Through it all he did not tell his principal, Mr. Williams the overall usual and daily information an agent or employee must or is required to tell. The court thus must believe this withholding of information is part of a planned scheme of things, as has been intimated by the plaintiff.
Mr. Ligon the general and overall manage of NACU testified that he "assumed" Mr. Sanders was, "something" in the Keyes Sanders Funeral home in Waterbury. He also "believed", that he "thought", Mr. Williams was "something" in the Keyes-Sanders funeral Home in Waterbury or so he assumed.
Mr. Ligon never inquired of Mr. Williams as to what his status was, and said, that in fact, he did not know Mr. Williams.
With this knowledge, or lack thereof, Mr. Ligon, the manager of this small neighborhood credit union accepted payor funeral home checks with Mr. Sanders endorsement, and deposited them in Sanders personal accounts and then allowed them to be subsequently withdrawn by Sanders for whatever his needs were.
It causes one to believe that Sanders selected this small quasi bank with its one employee, instead of a larger full service bank, for reasons other than its proximity to the funeral home where he was employed. CT Page 5061
Mr. Ligon should have required Mr. Sanders to give him positive proof of his status in the Keyes-Williams Funeral Home, Inc., before he permitted him to open new accounts with checks naming the funeral home as payee. There is a need to distinguish corporate, individual, and business accounts, one from the other, and their respective legal effects deriving therefrom, especially when using a corporate check to open a proprietorship account.
The accounts opened by Mr. Sanders were sole proprietorship accounts, a type of individual account.
William Blair, a banking professional for many years, called by plaintiff (Keyes-Williams, Inc.) as an expert, who worked a great deal with the deposit functions during his banking career testified that Mr. Sanders as an employee only, of Keyes-Williams, Inc., had no authority to endorse or deposit checks payable to the Corporation at NACU.
He may have had authority to deposit checks payable to his employer in the employers bank, but not in NACU. Under the circumstances, then existing, NACU did not follow reasonable commercial standards in the banking business, in the transactions at issue in this case and, therefore must bear responsibility for the consequences of its business decision not to ensure that the U.C.C. standards were followed.
Accordingly the defendant NACU is found liable as well as the defendant.
James R. Sanders, is liable for the proceeds of the check payable to the Keyes-Williams Inc. Funeral home that were put through the NACU by Sanders and paid out to Sanders by NACU, for his personal use.
Some of the checks Mr. Sanders put through NACU were his pa checks, and the proceeds of loans, and of course he is entitled to a set off and/or credit for money of the plaintiff that he used to pay bona fide business expenses.
In the plaintiff's case against Mr. Sanders he raises a special defense that the action is, in part time — barred.
The court disagrees, and views the defendants misdeeds as ongoing violations during the years of Mr. Sanders employment by the plaintiff, thus tolling the statute of limitations that would have precluded efforts to recover for the earlier transgressions. Sanders active concealment of the facts that would have given the plaintiff the impetus to commence an action, backs this view. By chance, an employee of the plaintiff, Harold Cole, found an old NACU statement, that had been addressed to Mr. Sanders, in the CT Page 5062 plaintiffs funeral home in Waterbury, where Sanders had worked and lived, while cleaning the building in the spring of 1988. The statement shown to Mr. Williams revealed a $5,000.00 deposit into the defendants NACU account. Mr. Williams astounded and angered, confronted the defendant Mr. Sanders. Mr. Williams response to this information, showed his lack of knowledge of this large deposit into Sanders hitherto unknown NACU accounts in the spring of 1988, and was due to Sanders active concealment of the Waterbury business of the funeral home, in all aspects.
Thus neither limitations nor laches are a bar to this action started in June of 1988.
The defendant, Sanders, has raised many theories in defense of the allegations lodged against him that the court will now attempt to address.
In the first of this triad of cases, Mr. Sanders alleged and argued that he was an owner. If so, many of the acts charged against him would not have been illegal. The court after hearing the case, ruled that he was not an owner in its opinion and found that at best he was an employee.
The defendant Sanders alleged in a special defense that the plaintiff was contributorily negligent, in that he held Sanders out to be a partner and checks for services rendered flowed across his desk etc. Contributory negligence is not a defense to conversion. C.G.S. Sec. 42a-3-406 does create such a defense when a person's negligence substantially contributes to the making of an unauthorized signature. It is only available to one, "who pays the instrument in good faith, and in accordance with the reasonable commercial standards of the drawees or payor's business." Neither Mr. Ligon or NACU ever contacted Mr. Williams and the checks endorsed by Mr. Sanders made their way through the banking system unseen by Mr. Williams. Thus, with no proof offered by NACU of the elements required by C.G.S. Sec. 42a-3-406, this special defense must fall.
The defendant mounted a special defense based on limitations, that is governed by C.G.S. Sec. 52-577 covering actions based on tort. The stated period is three years with many exceptions, and the court has addressed the exception relating to the tolling of the statute that applies here in this opinion. This case is an example of the pleading and proof of a continuing course of conduct that resulted in a loss to the funeral home. Therefore, the statute of limitations was tolled until the conduct was terminated in June of 1988. This action was commenced on April 10, 1989 and thus limitations is not a bar to recovery.
Waiver and estoppel are not defenses available to Mr. Sanders, CT Page 5063 though they are half heartedly embraced.
As soon as Mr. Williams learned of Mr. Sanders fraudulent activity he commenced these legal actions against him, with no prior condonation of any of Mr. Sanders acts. Estoppel is likewise no defense to the defendant.
Connecticut law allows only one recovery for an injury. Therefore, any payments made by Mr. Sanders in satisfaction of a judgment would be credited to the specific type of damage awarded on each account. The court can award damages on each of the counts that it finds the plaintiff has prevailed upon.
The resolution of these cases required proof of many of the same facts as Keyes Funeral Homes v. James Sanders, and James Sanders v. Earl I. Williams, and Earl I. Williams, d/b/a Keyes-Williams Funeral Home, v. Need Action Federal Credit Union (NACU). Therefore by agreement of the parties, it was agreed that all evidence presented at the trial of the Keyes Funeral Homes, Inc., and Sanders cases would be admitted as evidence in this case, against Need Action Federal Credit Union.
As previously indicated in the foregoing body of this opinion, the court finds for the plaintiffs Earl I. Williams v. Need Action Federal Credit Union, and Earl I. Williams d/b/a Keyes-Williams Funeral Home and Keyes Funeral Homes Inc. v. Need Action Federal Credit Union and Keyes Funeral Home Inc. v. James R. Sanders and for the defendant Earl I. Williams, et al. v. James R. Sanders.
In the course of these trials the defendants Sanders and NACU have contended that with respect to damages, the plaintiffs must prove them with certainty. The Connecticut Supreme Court has rejected this theory as has the U.C.C.
Therefore, it is the order of this Court that Earl I. Williams, Keyes Funeral Homes, Keyes Williams Funeral Homes Inc., etc. shall recover judgment with damages, costs, prejudgment interest and attorneys fees, with interest to accrue on the judgment until it is paid, by James and Annie Sanders and Need Action Federal Credit Union as shall be hereinafter set out.
Need Action Federal Credit Union argues that it did nothing intentionally wrong. Luciani v. Stop and Shop Cos., 15 Conn. App. 407, states clearly that liability for conversion does not require proof of evil intent. However, because of the Credit Union's mistake in allowing Sanders to place funeral Home monies in his personal account, the funeral home has been denied the use of those funds. This is the wrongful act for which the defendant is liable.
Mr. Sanders cannot properly account for $130,695.95 of the CT Page 5064 Funeral Home money that has been converted to his own use. By his actions Sanders provided clear and convincing evidence that he knowingly and intentionally diverted Funeral Home monies for his own use.
Nor can Mr. Sanders account for 46 missing funeral contracts, 7 unknown funerals and 32 welfare funerals that he conducted and never sought payment for from the State of Connecticut.
Therefore, Judgment is ordered for the plaintiffs on the 1st and 3rd counts requiring the defendants Sanders to reconstruct as best as is possible, the 46 missing contracts, and 7 unknown funerals he was involved with as well as provide the information necessary to allow application for the fees due, from the state if still unpaid, for the 32 welfare burials.
Judgment should also enter on the second, fourth and fifth counts as follows:
SECOND COUNT —
The Accounting
$130,696.00 — Compensatory
 65,348.00 — Prejudgment Interest plus taxable Costs. ----------- $196,044.00
FOURTH COUNT
Conversion
$78,235.55 — Compensatory
39,117.78 — Prejudgment Interest
39,117.78 — Attorney's Fee
 14,293.43 — Costs ---------- $170,744.54
In this fourth count, the $170,744.54 judgment payment is to be shared equally by James Sanders and Need Action Federal Credit Union. Sanders was the principal but NACU by its own active negligence was a full participant and equally liable.
Need Action has argued in its brief for indemnification by Sanders, if it is found to be liable for plaintiffs' losses. CT Page 5065
The court disagrees and denies this argument.
Indemnification is allowed at times in limited circumstances. In the absence of a statutory or express contractual basis, indemnification must be based on the "Active v. Passive Negligence theory, i.e. the so called "Active" tort feasors conduct must be the sole direct cause of the injury, and he must be in "exclusive control of the situation. This was not the case here. Kyrtatas v. Stop Shop, Inc., 205 Conn. 694. Without NACU negligence, Sanders would not have been able to cash or deposit into his personal account, checks made payable to Keyes — Sanders Funeral Home. Also, it is agreed that Mr. Sanders never stated, suggested or implied that he was the sole owner of the Funeral Home.
In addition no contractual or statutory claim for indemnification has been alleged by NACU. Thus, Judgment is ordered in favor of the third party defendant James R. Sanders on the third party complaint of NACU in this action.
C.G.S. Section 52-564 provides treble civil damages for theft. "Any person who steals any property of another. . ., shall pay the owner treble his damages." This C.G.S. Sec. 52-564 is synonymous with Criminal Statute Sec. 53a-119 of the C.G.S. larceny. "A person commits larceny when with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains, or withholds such property from an owner." This statute includes in part "Embezzlement: a person commits embezzlement when he wrongfully appropriates to himself or to another property of another in his care or custody."
In order to qualify for the treble damages, the theft need not be proven beyond a reasonable doubt, but simply, by clear and convincing evidence. Schaffer v. Lindy, 8 Conn. App. 96. Keyes Funeral Homes, Inc. has presented sufficient evidence of Mr. Sanders knowing and intentional diversion of Funeral Home monies for his own use.
Mr. Sanders actions make it impossible for the court to reach any other conclusion. He consistently hid from Mr. Williams that he had a personal account in which he was putting Funeral Home monies. He kept this to himself at the time they were "negotiating", the partnership agreement, and at the time had $15,000 of Funeral Home monies in his NACU account.
Despite a duty to disclose, Sanders continued his deception from January of 1984 through the autumn of 1988, and through a court hearing before Hodgson, J.
One who hides and secretes business records from his partner CT Page 5066 or employer, or whatever he thought he was, is doing so for his own benefit. By keeping Mr. Williams in the dark about this account, Sanders was able to continue to take monies payable to the funeral Home through NACU and divert them for his own use without detection. He did this intentionally and as a result, the net sum of $78,235.55 was converted to Mr. Sanders own use, and the court finds this to be clear and convincing proof that it was embezzled from the Funeral Home.
That $78,235.55 should be trebled pursuant to the C.G.S. 52-564
and damages should be awarded on the fifth count of the complaint in the amount of $234,706.65 plus the agreed upon 1/3 attorney's fees of $78,235.55.
The court therefore, having found that Mr. Sanders committed theft upon the plaintiffs, orders that judgment shall enter on this fifth count, for the plaintiffs against the defendants Sanders as follows:
FIFTH COUNT
Theft
78,235.55 x 3 = $234,706.65 — Statutory Treble Damages (C.G.S. 52-564)
39,118.78 x 3 = $117,353.32 Statutory Treble Prejudgment Interest plus taxable Costs
$78,235.55 Attorneys fees.
Prejudgment Interest can be granted in a case when equity demands it. In this matter, funds that would have otherwise come into the funeral home were being diverted for Mr. Sanders personal use.
As a result, Mr. Williams found it necessary to borrow funds in order to keep the business operating. A letter from CBT entered as an exhibit shows that Mr. Williams had already expended in excess of $90,000.00 interest on the loans he took out to keep the business operating while Mr. Sanders was embezzling or misappropriating funds. This then, is an actual element of damage in this case that is required to make Mr. Williams whole.
The accountant (ordered hired by the court) shows that 50% of the total money deposited in NACU by Sanders was prior to April 1987 and 50% after. The average time the plaintiff was deprived of his funds was five years.
At the statutory rate of 10%, any compensatory damage award CT Page 5067 should have 50% added for prejudgment interest, and it is proper to treble the prejudgment interest as an element of damage on the fifth count.
The court orders that Mr. Sanders turn over the remaining $5,000.00 in moneys held in the name of the Keyes-Sanders funeral home now on deposit in First Federal Savings and loan by agreement between the parties. This money represents sums collected by Sanders for funerals after he was terminated as an employee of the funeral home.
All credits due James Sanders and/or Annie Sanders, his wife and NACU have been subtracted from moneys found to be due to the plaintiff.
To summarize, the court finds for the plaintiff, Earl I. Williams, Keyes Williams Funeral Homes and Keyes Williams funeral Homes, Inc. against the defendants James R. Sanders, Annie Sanders and Need Action Federal Credit Union and orders judgment, damages, costs, counsel fees and prejudgment interest, to be paid by the defendants to the plaintiffs as follows:
First Third Counts:
The defendants Sanders are ordered to reconstruct as best as possible and pay to the plaintiffs the sums due for the 46 missing funeral contracts, for funerals handled that may remain unpaid in the amounts due to plaintiffs, as well as the sums due plaintiffs for the 7 funerals that are allegedly unaccounted for.
The said defendants are ordered to apply for and/or give information to allow the plaintiffs to apply to the state of Connecticut for payment for the 32 welfare funerals that may not have been paid for by the State.
Second Count
 $130,696.00 — Compensatory 65,348.00 — Prejudgment Interest plus Taxable Costs ----------- $196,044.00 —
Fourth Count — Conversion
 $ 78,235.55 — Compensatory 39,117.78 — Prejudgment Interest 39,117.78 — Attorneys fees 14,293.43 — Costs ----------- $170,744.54
CT Page 5068
This $170,744.54 sum is ordered to be paid by James R. Sanders et al and Need Action Federal Credit Union. The indemnification request by Need Action Federal Credit Union against James R. Sanders is denied.
Fifth Count — Theft
 78,235.55 x 3 = $234,706.55 — Statutory Treble Damages (as per C.G.S. 52-564)
 39,118.78 x 3 = $117,353.32 — Statutory Prejudgment Interest Plus Taxable Costs -------------------- $352,059.87
The total Judgment is:
 196,044.00 — 170,744.54 352,059.87 ----------- $718,848.41
$5,000.00 — Held 1st Federal S L is to be given to the plaintiff.
Trial testimony indicated plaintiffs' counsel fees were to be one third, contingent upon gross amount recovered plus whatever costs plaintiffs counsel expended.
Judgment as ordered.
WILLIAM BEALE RAMSEY, STATE TRIAL REFEREE