[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTIONS FOR PREJUDGMENT REMEDIES
The plaintiff, Eastern Electronics Manufacturing Corporation ("Eastern"), brought this action for breach of contract and to recover monies owed to it by the defendant Codenoll Technology Corporation ("Codenoll"), for electronic circuit boards and related components which it manufactured for Codenoll. Eastern seeks a prejudgment remedy in the amount of $527,688.38. Codenoll filed special defenses and a counterclaim against Eastern and seeks a prejudgment remedy to secure the amounts it claims are owed to it by Eastern on the counterclaim. After hearings on the cross motions for prejudgment remedies the court finds that Eastern has established probable cause to support its motion and orders that a prejudgment remedy may issue in favor of Eastern against Codenoll in the amount of $527,688.38.
The vast majority of the evidence presented at the hearing was presented by Codenoll in support of its claims for damages against Eastern. Codenoll claims to have sustained a variety of damages because of various defects in circuit boards ("FDDI boards") which were manufactured by Eastern in accordance with specifications provided by Codenoll.
Codenoll is in the business of selling computer components. It generally does not manufacture its own components, but, instead, provides the design of components to manufacturers such as Eastern, who produce the components for Codenoll to sell to its customers. CT Page 726 During the winter of 1992, Eastern and Codenoll entered into certain contracts for the sale of goods by Eastern to Codenoll. These goods included the FDDI boards, for which Codenoll provided Eastern the artwork, specifications and testing equipment. From March 27, 1992 through June 1992, Eastern delivered $527,688.38 worth of goods to Codenoll. Codenoll accepted the goods, but has failed to pay any of the foregoing amount to Eastern.
The FDDI boards were delivered to Codenoll on various dates from March 27, 1992 to June 4, 1992. When they were delivered they were subjected to a visual inspection and were subjected to functional testing during the first or second week of April, 1992. The functional testing showed that some of the boards operated more slowly than was expected. Some of the boards were sold to Codenoll customers and Codenoll received approximately $300,000 from the sale of the boards.
According to the testimony of Michael Coden, Codenoll's president, Codenoll was aware that the boards were not functioning properly by mid-April, 1992, a time when Codenoll had not yet received delivery of all the boards from Eastern, yet Codenoll did not notify Eastern of the problem at that time or at any time thereafter. Instead, Codenoll set out on a feverish quest to pinpoint the exact nature of the defects. Codenoll claims that this quest consumed the services of five engineers for hundreds, even thousands, of hours.
By the time of these hearings Codenoll had determined that the FDDI boards had the following defects: 1) the boards were put together with screws that were too large; 2) the annular ring width on 1-2% of the connections in the boards was incorrect, which could cause faulty connections; 3) excessive flux was used in soldering the boards; 4) there were certain cosmetic blemishes on the boards, which did not affect their performance; and 5) the trace and spacing widths deviated from design specifications in some parts of the boards.
An expert retained by Codenoll was able to determine the aforementioned defects in the boards after 30 hours of work. Therefore, it does not seem reasonable, or believable, that Codenoll could not detect the cause of the boards' supposed malfunctions without spending hundreds of hours in testing.
Section 42a-2-607(3) of the Connecticut General Statutes provides: CT Page 727
 Where a tender has been accepted (a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred form any remedy.
Therefore, the question of whether and/or when Codenoll notified Eastern of the breach must be answered as part of the determination of whether Codenoll has established probable cause to support its Motion for Prejudgment Remedies.
In July of 1992 after Codenoll had received invoices demanding payment for the goods it received from Eastern, it took the somewhat unusual step of sending Eastern a "debit memo". That document, dated July 16, 1992, is a preprinted form which lists the quantity and description of the FDDI boards and the amount charged by Eastern for the boards, $302,756.91. At the bottom of the form the following words appear, "We debit your account as shown." The form also contains a small box with the preprinted words, "reason for debit" and the following hand written words, "Did not pass incoming inspection."
Codenoll claims that the debit memo constituted timely notice of the claimed breach as required by 42a-2-607. The court does not agree.
Comment 4 to 42a-2-607(3) provides that "The time of notification is to be determined by applying commercial standards to a merchant buyer." In Superior Wire Paper Products Ltd. v. Talcott Tool and Machine, Inc., 184 Conn. 10, 491 A.2d 43 (1981), the plaintiff sued the defendant buyer to recover the unpaid purchase price of shipments of steel. The defendants counterclaimed seeking damages for breach of warranty. Between March 1974 and December 1974 the plaintiff sold the defendant several shipments of steel. Nine months after the initial shipment at a time when the defendant owed the plaintiff substantial amounts for the steel, the defendant notified the plaintiff for the first time that the quality of the steel was causing the defendant's customers to complain. The Court held that the defendant's notice of alleged defects was not timely made.
In Bead Chain Manufacturing Co. v. Saxton Products, Inc.,183 Conn. 266, 439 A.2d 314 (1981) the seller sued the buyer for failure to accept delivery of goods tendered pursuant to the contract of sale and for failure to pay related costs. The seller CT Page 728 had delivered installments of the finished products over a seven month period commencing in October, 1973. Until July 1974, the buyer neither rejected any of the tendered goods, nor complained about their nonconformity. Then in July 1974 when confronted with a bill, the buyer for the first time stated that the products were defective. The Supreme Court upheld the trial court's decision awarding the seller the contract price. The Court agreed that the buyer's notice of defects was not timely given.
Certain claimed defects in the FDDI boards were detectable by visual inspection. Codenoll was aware of the boards' alleged slow performance time in mid April, 1992, yet it failed to contact Eastern until July 16, 1992. The failure to notify Eastern of a problem immediately upon becoming aware of it was particularly unreasonable under the circumstances of this case. In April, 1992 Eastern had not yet delivered all the boards. A prompt notice of defect might have permitted Eastern to correct the defects or to stop further shipments of the boards.
Codenoll correctly argues that the notice of defect required under 42a-2-607(3) is less detailed than that required upon rejection of goods. Comment 4 to 42a-2-607(3) provides:
 The content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched. There is no reason to require that the notification which saves the buyer's rights under this section must include a clear statement of all the objections that will be relied on by the statements of defects upon rejection (Section 2-605). Nor is there reason for requiring the notification to be a claim for damages or of any threatened litigation or other resort to a remedy. The notification which saves the buyer's rights under this Article need only be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation.
The terse language in the debit memo, "did not pass incoming inspection" did not inform Eastern of the breach, even under the standards of 2-607(3). It did not give Eastern any information whatsoever about the nature of the breach and certainly did not provide any opening to settlement through negotiation envisioned by the foregoing Comment. The timing and form of the debit memo gave Eastern notice only that Codenoll did not intend to pay it for the CT Page 729 FDDI boards.
In determining probable cause to sustain a motion for prejudgment remedy the court must assess the credibility of the evidence submitted by the movant. Codenoll's total failure to communicate with Eastern about the alleged defects in the FDDI boards casts serious doubt on its claim that those defects caused Codenoll to sustain millions of dollars in damages, or, indeed, any damages at all. If the defects in the boards really opened Codenoll to the prospect of sustaining millions of dollars in damages, wouldn't Codenoll have made some attempt to inform Eastern of the problem and enlist Eastern's aid in correcting it? The court finds that Codenoll has not established probable cause to support its claims for damages as a result of any alleged defects in the FDDI boards.
Codenoll also seeks damages for Eastern's alleged conversion of equipment that Codenoll supplied to Eastern in connection with the manufacturing of the FDDI boards. Conversion occurs when one, without authorization, assumes and exercises the right of ownership over property belonging to another, to the exclusion of the owner's rights. Luciani v. Stop Shop Cos., 15 Conn. App. 407, 409
(1988). Michael Coden testified that Codenoll supplied Eastern with certain equipment, raw materials, and other components on a consignment basis and had not asked for a return to the materials. The court finds no probable cause to support the conversion claim. Based on the foregoing, Codenoll's Motion for Prejudgment Remedies is denied.
By the Court,
Aurigemma, J.