[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case arises out of a dispute between the plaintiff, David Janicki, d/b/a Country Club Garage (plaintiff) and the defendants, Carl and Terry Sciola (defendants). The plaintiff litigated three counts against the defendants.
The first count is a claim for a breach of contract to pay for the labor and materials to install an engine in a used truck purchased by the defendants for use in their plumbing business. The second count is, in effect, a claim for unjust enrichment and the third count is a claim that the defendants converted the plaintiff's property.
The defendants filed an answer denying the allegations of the plaintiff's complaint and several special defenses and counterclaims. The first special defense alleges that the agreement for the repair work was void due to the plaintiff's failure to receive authority to perform the work and increase the scope of the repairs. The second special defense alleges estoppel due to fraud and the third special defense alleges that the defendants were the rightful owners of the vehicle during the period of time the plaintiff re-obtained possession. An additional special defense alleged a set-off of the damages claimed.
In addition, the defendant brought a two-count counterclaim against the plaintiff. Count one of the counterclaim alleges conversion of the truck by the plaintiff causing damages to the defendant with respect to loss of use, loss of income and a claim that an amount of tools had been taken from the vehicle during the period of time it was repossessed by the plaintiff. The second count alleged a violation of the Connecticut Unfair Trade Practices Act (CUTPA) C.G.S. § 42-110a et seq.
The defendants sought monetary damages, treble damages pursuant to C.G.S. § 52-564, punitive damages pursuant to C.G.S. § 42-110a et seq. and reasonable attorneys fees pursuant to C.G.S. § 42-110g. CT Page 3669
Based on the evidence and documents submitted, the court makes the following conclusions:
In July of 1998, the defendants had purchased a 1991 GMC box truck which was towed to the plaintiff's auto repair garage as the engine in the vehicle was inoperable. The parties agree that the plaintiff was to replace the engine and additionally fix the air conditioning. The defendants paid for the actual engine block installed and the plaintiff performed work and installed parts to render the vehicle operable.
On August 26, 1998, the repairs on the vehicle had been completed and the defendant came to the plaintiff's premises to pick it up. At that time, the defendant paid the plaintiff $1000 in cash and received a bill for $3339, which the defendant disputed.
At that time the defendant was informed that he had to sign an authorization for the work performed and to pay the amount claimed in order to have the vehicle released. Until that date, there had been no written authorization submitted or signed by the defendant for either the initial repairs or any additional work performed by the plaintiff.
The defendant called his attorney, who advised him to pay the bill and that they would subsequently resolve the dispute. The plaintiff turned the vehicle over to the defendant who, upon arriving home, decided to stop payment on the check given to the plaintiff.
On September 14, 1998, the plaintiff went to the premises of the defendant and removed the defendant's truck, bringing it back to his garage. The plaintiff claims that he had been asked to perform additional repairs on the truck by the defendant, which the defendant denies. This court does find it credible that authorization was received to repossess the truck by the plaintiff. It would seem highly unlikely that a defendant, after stopping payment on a check to obtain possession of a vehicle from a repair shop, would call the shop and ask them to repossess the vehicle. In addition, the only work claimed by the plaintiff upon recovering the vehicle was the replacement of a single spark plug, for which there were no charges.
Upon repossessing the vehicle, the plaintiff indicated he was exercising a lien on the truck and refused to return it to the defendants. Although the defendants did offer to pay the $3313.99, the plaintiff refused payment, requiring that the payment be made in cash, that an additional $25.00 be paid for the cancelled check and there was further evidence that a request for attorneys fees was made, although an CT Page 3670 attorney had not been involved in this particular matter at this particular time.
On December 3, 1999, pursuant to an order of the court, the defendant was allowed to re-obtain items in the defendant's truck located at the plaintiff's premises and there was a question as to whether or not some plumbing tools were missing when the defendant went on that date to retrieve them. Eventually, on January 20, 1999, after posting a $100 bond, the defendant was allowed to repossess his vehicle. It should be noted that prior to that date, the plaintiff had filed notice that the vehicle was to be auctioned off to satisfy his lien.
There is no doubt in the court's mind, that neither the plaintiff nor the defendant were aware of C.G.S. § 14-65f which precludes an automobile repair shop from charging for parts for work done without a written authorization at the initiation of the repairs. However, the pleadings and the testimony during trial did contain references to the fact that there was only an initial oral agreement with respect to the repairs performed on the vehicle and although the pleadings did not make a specific reference to § 14-65f (a) this court has concluded that the specific reference to that statute is not mandatory in this particular case and further, after a request for briefs concerning this issue, the plaintiff would appear to have waived any claim as to the effect of its absence within the pleadings.
It is the opinion of this court that the plaintiff is not entitled to an award for the parts and labor performed on the defendant's vehicle pursuant to the absence of a written authorization as required under C.G.S. § 14-65 (f). Therefore, judgment may enter for the defendants as to the first count, the second count and the third count filed against the defendants.
With respect to the defendant's counterclaim alleging conversion, it is the opinion of the court that the plaintiff, although not aware that his lien was invalid as a result of his failure to comply with § 14-65f, had given up possession of the vehicle and did not have authority to repossess it in order to re-assert a lien for purposes of collection. "Conversion occurs when one, without authorization, assumes and exercises the right of ownership of a property belonging to another, to the exclusion of the owner's rights." Falker v. Samperi, 190 Conn. 412, 419. "The intention required is an intention merely to exercise a dominion or control over the chattel which in fact seriously interferes with the right of another to control it." Luciani v. Stop Shop,15 Conn. App. 407, 411 (1988). CT Page 3671
Therefore, this court finds for the defendant with respect to the first count of the counterclaim against the plaintiff.
The second count of the counterclaim is a request for finding that the plaintiff's conduct constituted unfair and deceptive acts in conjunction with his business which was in violation of C.G.S. § 42-110a et seq.
With respect to the violation of § 14-65f and § 14-65g, this court has indicated that neither party was aware of the applicability of this statute during the period of time the transactions took place and the issue was subsequently raised as almost an afterthought. There is no question that its applicability affected the outcome of the primary dispute between the parties. Summarily, this court does not believe that the violation of § 14-65f and § 14-65g rose to the level of a CUTPA violation. However, it is further the opinion of the court that repossessing the defendant's vehicle without permission to assert a mechanic's lien satisfies the requirements established by the law of Connecticut that the conduct offend public policy and is immoral, unethical, oppressive or unscrupulous. See Haynes v. Yale New HavenHospital, 243 Conn. 17, 33 (1997). Therefore, the court finds for the defendant with respect to the second count of the counterclaim against the plaintiff.
With respect to damages, it is the opinion of the court that a claim for triple damages under § 52-564 of the Connecticut General Statutes does not apply in this particular case. Although the conduct of the plaintiff was improper, the intent was not to steal the defendant's truck for his own use, but a misguided sense of justice to reassert his lien.
With respect to actual damages, the court has concluded the defendant has failed to submit credible evidence to establish actual damages as a result of the plaintiff's conversion of the vehicle. Overall, the defendant's testimony concerning claimed losses was quite inconsistent.
The defendant claimed that he was required to rent an additional truck in the amount of $100 a week as a substitute vehicle to operate his business.
However, aside from the defendant's representation, there was no verification as to any monies paid and the testimony indicated that the defendant, in fact, just continued to use the truck he had been previously using for his business, maintaining both title and insurance. There was a claim made that the money was paid to the subsequent owner of the truck, but the actual date of any transfer was not referenced nor were there any receipts furnished or testimony from the recipient of the CT Page 3672 rental charges.
The defendant claimed the amount of damages for the tools reportedly stolen from his truck totaled $3500, but again, the court did not feel that that amount was established with a sufficient degree of credibility and the defendant offered no corroborative evidence except his own testimony. There was a broad reference to the amount of $3500 being paid to flea markets for the tools, but there was never a list with any detail of the individual items purportedly taken and the particular value for each. In addition, there were no receipts furnished with respect to the repurchase of any of the items on the truck and, as indicated, the testimony was somewhat inconsistent.
Finally, the defendant testified that he lost the opportunity for two or three jobs as a result of the tools in his truck being unavailable. However, there was no verification from anyone, except the defendant's hearsay testimony as to the viability of those jobs and evidence, in fact, that the plaintiff did maintain his plumbing business up to and until the time he retrieved his truck in January.
Therefore, it is the opinion of this court that the defendant is not entitled to actual damages with respect to the counterclaims filed against the plaintiff. With respect to punitive damages, within the discretion of this court and in balancing the equities, the awarding of punitive damages is not justified.
In any action brought by a person under C.G.S. § 42-110g (d) costs and reasonable attorneys fees are allowed based on the work reasonably performed by an attorney. There was testimony with respect to the conversion of the truck, as opposed to the defense of the plaintiff's claim, that two appearances were required to first obtain permission to retrieve the tools from the truck and secondly to receive possession of the truck.
Therefore, this court does award $750 in attorneys fees plus costs for the defendant.
Richard P. Gilardi, Judge CT Page 3673