Plaintiffs bring this action to recover $19,800.00 from the defendant, who plaintiffs claim invested their funds without consent, and subsequently lost same.
Defendant, in his answer, denied the material allegations of their claims. Thereafter, the matter was tried to the court. At the court's request, the parties filed post trial briefs. The plaintiffs ruled theirs on March 16, 1992, and the defendant filed his one day later.
After a careful consideration of the credible testimony adduced at trial, together with the parties' various exhibits, the court finds that a fair preponderance of the evidence supports the following CT Page 5550 finding of fact.
On February 18, 1986, the plaintiffs placed the sum of $20,000 with the defendant for investment purposes. At the time, the defendant, who was doing business as Joseph DeMaria Associates, Financial Planners and Consultants, was their friend, neighbor, and in his capacity as an accountant, their income tax preparer.
Acting on their behalf, the defendant loaned the money to one Richard Ricci. The loan was secured by a mortgage on the debtor's property and produced interest at a favorable rate.
In a June 19, 1987 letter from defendant to plaintiffs transmitting an interest check, defendant suggested that plaintiffs consider leaving their original investment with him to be reinvested in one of several of his new real estate projects. (Defendant's Exhibit 3.)
On August 6, 1987, the $20,000.00 loan was repaid in full by Ricci to the defendant, acting in plaintiffs' behalf. In his letter of the same date informing plaintiffs of such payment, defendant referred to a project in Waterbury on which he was working. He suggested that they allow the reinvestment of their $20,000.00 in that project and asked that they advise him of their decision. (Plaintiffs' Exhibit C.)
With his letter of October 28, 1987 directed to plaintiffs, defendant enclosed a detailed prospectus describing the proposed formation of a limited partnership, DPS Woodcrest Associates, L.P., and its acquisition of a 50 percent interest in 24.3 acres of undeveloped land located in Waterbury, Connecticut. It described as the purpose of the joint venture the construction of 86 single-family houses on that property and their ultimate sale for profit. Defendant recommended that the plaintiffs invest in the limited partnership and asked for their decision regarding same. (Plaintiffs' Exhibits E, M.)
Thereafter, the plaintiff, Kenneth Mackey, telephoned defendant and asked what the prospectus "meant." Neither Mrs. Mackey nor Mr. Mackey, a railroad conductor, were sophisticated investors. Their investment fund consisted of $20,000.00 received as proceeds from an auto accident claim which was earmarked for future use as their son's college fund.
Defendant, in response, informed plaintiffs that with this investment the $20,000.00 fund would increase to $47,000.00 or more by 1990, still, the plaintiffs did not authorize the investment.
In defendant's March 10, 1988 letter regarding the Woodcrest CT Page 5551 Limited Partnership, he indicated that it was necessary for the plaintiffs to formalize their investment by completing, signing and returning the enclosed Investment Questionnaire and Subscription Agreement. (Plaintiffs' Exhibits F, G, H.) Again, Kenneth Mackey called defendant and informed him that he would not qualify as an investor and that he was concerned with the risk factor of such an investment. Further, he informed defendant that neither he nor his wife would complete, sign or return the documents. However, Mackey did tell defendant, as had Mrs. Mackey in the past, that they were still interested in investments similar to their first (the second loan to Ricci.)
In his letter of May 5, 1988, returning $200.00 of their original $20,000.00, defendant indicated to plaintiffs that their one unit investment in the Woodcrest Limited Partnership cost is $19,800.00. (Plaintiffs' Exhibit I.) In another letter of the same date, defendant enclosed a $792.00 check purportedly representing interest earned on plaintiffs' investment in the Woodcrest Limited Partnership from August 7, 1987 through December 31, 1987. (Defendant's Exhibit 5.) It should be noted that this letter from defendant indicates August 7, 1987 as the date of plaintiffs' investment in the limited partnership, while in his letter of October 28, 1987 accompanying the prospectus, defendant asks if the plaintiffs would like to invest in same.
The court accepts as factual the plaintiffs' claim that they were unaware of their investment in the limited partnership until the May 5, 1988 written notification from defendant, and that they never authorized him, orally or in writing, to invest in same. The defendant, whose testimony on this point is not credible, would have the court believe that the plaintiffs were aware of the investment from the beginning and orally authorized same.
Upon receipt of the May 5 letter indicating that their money was invested in the limited partnership, plaintiff, Kenneth Mackey, called defendant to ask what he was doing with their funds. Once again he told defendant that the investment was too risky. Defendant attempted to allay plaintiff's fears by telling him that he and his wife were going to make a lot of money on the investment and that they should trust him. Subsequently, by letter dated June 7, 1989, plaintiffs learned that the limited partnership was experiencing financial problems and that their $19,800.00 was at risk. (Plaintiffs' Exhibit J.)
Following the next letter received from defendant dated November 7, 1989, plaintiffs telephoned defendant exclaiming that he lost their money. Defendant in response said that he put their money in the limited partnership and that he would be responsible for it. Plaintiffs, however, never received the return of any of their $19,800.00. Defendant's next letter of May 14, CT Page 5552 1990 indicated that the entire investment was lost. (Plaintiffs' Exhibit L.)
Defendant makes much of the K-1 schedule partnership return for 1987 used in plaintiff Kenneth Mackey's federal tax return. It shows a contribution of $19,800.00 to the Woodcrest Limited Partnership made on or about September 3, 1987. Defendant argues that this proves that Mackey was aware of the investment from the beginning. (Defendant's Exhibit 4.) However, at the time in question, defendant was plaintiffs' tax preparer and there is no indication when the return was shown to plaintiffs or filed with the I.R.S. Further, casting doubt on this piece of evidence is the fact that while it shows plaintiffs' investment in the limited partnership was made as of September 3, 1987, defendant, in his letter of October 28, 1987 directed to them, recommends that they invest in same. Finally, in his letter of May 5, 1988, defendant indicates that plaintiffs invested in the limited partnership on August 7, 1987. (Defendant's Exhibit S.)
As argued in plaintiffs' brief, it is clear to the court that:
 "[t]he limited partnership was presented to investors as a so-called `Regulation D' limited offering under the Securities Act of 1933. Regulation D allows for a limited exemption from the normal reporting and filing requirements of the Act. Section 2(1) of the Act, 15 U.S.C. § 77b(1), defines a security as, among other things, any `investment contract.' The Supreme Court defined an `investment contract' as `a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the promoter or a third party.' S.E.C. v. W. J. Howey Co., 328 U.S. 293, 298-299 (1946). The Court in Howey said that `such a definition . . . permits the fulfillment of the statutory purpose of compelling full and fair disclosure relative to the issuance of the many types of instruments that in our commercial world fall within the ordinary concept of a security.'
 Regulation D of the Act was developed `to simplify and clarify existing exemptions, to expand their availability, and to achieve uniformity between federal and state exemptions in order to facilitate capitol formation consistent with the protection of investors.' S.E.C. Release No. 6389, (84, 907); S.E.C. Release No. 6339, (84, 453). The Regulation, and rules adopted to implement it, was intended to provide relief from the inconvenience and burdensome costs associated with the normal reporting and filing requirements of the Securities Act for the small business seeking to raise capitol through the offering of securities.
CT Page 5553
 There can be no doubt that the limited partnership venture satisfies the definition of a `security' and that it was presented to the plaintiffs as a Regulation D offering. The defendant sent to the plaintiffs a prospectus, an investor questionnaire and a subscription agreement all designed to satisfy the requirements of Regulation D. In fact, page one of the questionnaire explains that, `Prior to your acceptance as a limited partner, you must meet . . . the standards imposed by Regulation D' (emphasis added). The prospectus contained information about the investment and indicated, on page 22-A, that each investor could expect a pre-tax rate of return of 39.23% on his investment. It also indicated that the defendant was to be the General Partner of the limited partnership. Although the defendant, at trial, described the prospectus, the questionnaire and subscription agreement as `overkill by Schatz Schatz,' the defendant himself wrote to the plaintiffs on March 10, 1988, `It is therefore necessary for you to formalize your investment by completing and returning the enclosed Investment Questionnaire and Subscription Agreement.' He added, in the same letter, `It is important that you complete each document and fill in all the necessary information' (emphasis added)."
The court has found that the plaintiffs did not complete, sign or return the documents as requested by the defendant, nor did they orally authorize such investment.
It is evident that the defendant had no general or specific authority to invest plaintiffs' funds in the limited partnership. When he did so without their consent, he exercised wrongful dominion over them and a conversion occurred.
The court in Epstein v. Automatic Enterprises, 6 Conn. App. 484
(1986), indicates that conversions are grouped into two general classes, those where possession is originally wrongful and those where it is rightful. The second class, where the possession originally rightful becomes wrongful by reason of a wrongful use of the property or the exercise of unauthorized dominion over it is similar to the case at bar. The Epstein case also states that in the latter situation no demand for the return of the property is required.
Clearly, defendant is liable for the conversion of plaintiffs' funds. In accord with the foregoing, it is adjudged that the plaintiffs recover of the defendant $19,800.00 damages, together with cost of suit. CT Page 5554